IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CR-318-FL-1
NO. 5:22-CV-305-FL

| | | |
|---|---|---|
| BRANDON MARQUIS JENNINGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on petitioner's motions to vacate, set aside, or correct sentence (DE 256, 285, 286)[1] pursuant to 28 U.S.C. § 2255, and respondent's motion to dismiss (DE 316). Also pending are petitioner's related motions: 1) for preliminary injunction and temporary restraining order (DE 315); 2) for evidentiary hearing (DE 322); 3) for criminal contempt (DE 332, 402); 4) to present newly discovered evidence as a supplemental pleading to the operative § 2255 motion (DE 340); 5) to allow supplemental pleading and amendment of the operative § 2255 motion (DE 365); 6) to amend the foregoing supplemental pleading (DE 369, 387); 7) to expand certificate of appealability (DE 389); 8) for investigation and report to news media (DE 396); 9) for court funds to pay counsel (DE 401); 10) to unseal transcripts (DE 403); and for relief from the court's November 4, 2022, order denying release on bail pending resolution of the instant § 2255 matter (DE 404).

Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Kimberly A. Swank

---

[1]     As discussed below, these motions are the operative motions to vacate. Petitioner filed additional motions to vacate which the court denied without prejudice to filing one comprehensive motion. (DE 276).

entered a memorandum and recommendation ("M&R") (DE 329), wherein it is recommended that the court deny petitioner's § 2255 motion and his motions for preliminary injunction/temporary restraining order (DE 315) and for evidentiary hearing (DE 322). The magistrate judge also recommends that the court grant respondent's motion to dismiss (DE 316). Thereafter, petitioner objected to the M&R (DE 338). The remaining motions noted above were not referred to the magistrate judge for ruling, and respondent did not respond to them. In this posture, the issue raised are ripe for ruling.

## STATEMENT OF THE CASE

In August 2018, petitioner was indicted on numerous charges related to sex trafficking. By text order entered the following month, the case was reassigned to this court upon recusal of the original judge. Superseding indictment was filed in March 2019, followed by the operative second superseding indictment April 4, 2019. Therein, petitioner was charged with the following:

1) sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a), (b)(1) (counts one and two);
2) sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a), (b)(2) (counts three and four);
3) production of child pornography, in violation of 18 U.S.C. § 2251(a), (e) (count five);
4) interstate transportation of a minor for illegal sexual activity, in violation of 18 U.S.C. § 2423(a) (count six);
5) interstate transportation for prostitution by coercion and enticement, in violation of 18 U.S.C. § 2422(a) (counts seven through nine);
6) interstate transportation for prostitution, in violation of 18 U.S.C. § 2421(a) (counts ten through twelve); and
7) use of the internet to promote a business enterprise involving prostitution and aiding and abetting, in violation of 18 U.S.C. §§ 1952(a)(3) and 2 (count thirteen).

In June 2019, following four-day trial, the jury convicted petitioner of the foregoing offenses. The court sentenced petitioner to concurrent terms of life imprisonment on counts one through four and six; 360 months' imprisonment on count five; 240 months' imprisonment on counts seven through nine; 120 months' imprisonment on counts ten through twelve; and 60

2

months' imprisonment on count thirteen. In addition, petitioner was sentenced to 15 years' supervised release in the event of release from imprisonment.

On direct appeal, petitioner presented three arguments challenging his conviction and sentence: 1) this court erred by admitting expert testimony of Dr. Sharon Cooper regarding the culture of sex trafficking; 2) insufficient evidence to support petitioner's convictions on counts three and four; and 3) the sentence was substantively unreasonable. See United States v. Jennings, 860 F. App'x 287, 288–90 (4th Cir. 2021); see also Opening Br., United States v. Jennings, No. 20-4432 (4th Cir. Jan. 19, 2021) (ECF No. 26). The United States Court of Appeals rejected these claims and affirmed the judgment of conviction. Jennings, 860 F. App'x at 288– 90.

Petitioner then returned to this court to challenge his convictions and sentence pursuant to § 2255. Procedural history pertinent to these motions, which is lengthy and complex, may be summarized as follows. Proceeding pro se, petitioner filed his first instant motion to vacate August 8, 2022, (see DE 256), together with related motions seeking release on bail and appointment of counsel. In the following weeks, petitioner filed several additional motions, including new motion to vacate and motion to amend same. On November 4, 2022, the court denied the motions for counsel and bail pending resolution of the § 2255 motions,[2] and directed petitioner to file one final comprehensive motion to vacate.

Ultimately, petitioner filed the instant two comprehensive motions to vacate (DE 285, 286) that are mostly identical, with one minor addition in the second motion. (See DE 286 at 47

---

[2] Petitioner appealed this order and the Fourth Circuit affirmed as to the denial of bail. United States v. Jennings, No. 22-7360, 2023 WL 2625621 (4th Cir. Mar. 24, 2023). The court of appeals dismissed the appeal for want of jurisdiction as to the request for counsel. Id.

(adding "continuation page" providing further factual support and legal argument for one of the claims)). Consistent with respondent's motion to dismiss and the M&R, the court addresses herein the second motion filed December 12, 2022 (DE 286) (hereinafter, the "operative § 2255 motion").

The operative § 2255 motion is 92 pages comprising petitioner's challenges to virtually every conceivable aspect of his convictions and sentence. Petitioner raises the following thirty claims for relief, many of which have discreet subparts. As discussed further below, for most of these claims petitioner argues that trial or appellate counsel were ineffective for failing to raise these issues.

1) The court abused its discretion by denying counsel's motion to withdraw from representation; various ineffective assistance of counsel claims premised on trial counsel's performance during the pretrial stages of the case; and trial counsel made improper remarks during opening statement and closing argument;

2) Trial counsel failed to argue third-party culpability before trial related to victim J.C.'s prostitution activities, and that there was insufficient evidence that petitioner knew victim J.C.'s age;

3) The judgment violates the Double Jeopardy Clause of the United States Constitution;

4) The court abused its discretion by not instructing the jury about a lesser included offense;

5) Violations of the court's sequestration order;

6) The court failed to remove biased spectators;

7) Trial counsel failed to move for a new trial based on petitioner's obstreperous conduct and refusal to engage with counsel during the pretrial stages of the case;

8) The court abused its discretion by allowing inadmissible evidence and various claims premised on counsel's failure to address at trial a police report providing J.C.'s account of the offense conduct;

9) Trial counsel failed to subpoena victim T.C.'s medical records that could have been used to impeach her testimony;

10) Appellate counsel failed to raise an unlawful enhancement argument on appeal;

11) Trial counsel failed to request voir dire as to the possibility of racial prejudice;

12) Trial counsel was ineffective for failing to request venue change;

13) Trial counsel failed to investigate petitioner's mental health issues or challenge the competency determination;

14) Appellate counsel failed to raise numerous issues on appeal that were stronger than the issues presented, and he failed to file a reply brief;

15) The court abused its discretion by enhancing petitioner's sentence using prior state

4

convictions;

16) Petitioner was not afforded the opportunity to meet with the probation officer or read the presentence investigation report prior to final publication;

17) Unnecessary delay in sentencing;

18) False arrest and law enforcement misconduct during the investigation of the offense conduct;

19) Trial counsel was ineffective for failing to seek dismissal of the charges based on vindictive prosecution;

20) Respondent's counsel made improper remarks during closing arguments;

21) Respondent's counsel used leading questions during trial examinations of the victims;

22) Trial counsel failed to request a "missing witness" jury instruction;

23) Trial counsel erred by admitting that petitioner was a belligerent pimp during closing arguments;

24) Trial counsel failed to object to a video exhibit that was presented during respondent's closing argument but not admitted during trial;

25) Trial counsel failed to object to inconsistent testimony of various trial witnesses;

26) Trial counsel failed to challenge the evidentiary basis for the grand jury indictment;

27) The court abused its discretion by not allowing petitioner to proceed pro se;

28) Trial counsel failed to object to admission of Facebook messages concerning victim R.W.;

29) The court abused its discretion by not applying the First Step Act to petitioner's sentence;

30) Petitioner was denied an impartial judge; and

31) Respondent constructively amended the operative superseding indictment resulting in petitioner's convictions for crimes not charged therein.

(DE 286, 290).[3]

Subsequently, petitioner filed the instant motion for preliminary injunction/temporary restraining order, seeking an order granting him release from custody or home confinement pending resolution of his habeas claims. Petitioner filed this motion notwithstanding the court's November 4, 2022, order denying release pending resolution of the habeas claims, and the Fourth Circuit's opinion affirming this order. See United States v. Jennings, No. 22-7360, 2023 WL

---

[3] As discussed further below, petitioner also asserts various subclaims under some of the general categories provided here, and the court addresses these claims as well in the analysis herein. In addition, the final claim numbered 31 was raised in petitioner's "supplemental pleading" filed several days after the operative § 2255 petition. (DE 290 (incorrectly docketed as a "memorandum" in support of the motion to vacate)). Consistent with the M&R and in light of petitioner's status as a pro se litigant, the court will consider claim 31 even though it was not filed with the operative § 2255 motion.

5

2625621 (4th Cir. Mar. 24, 2023)

Respondent filed the instant motion to dismiss the operative § 2255 petition pursuant to Federal Rule of Civil Procedure 12(b)(6). Respondent argues petitioner's claims are procedurally defaulted where he failed to raise them on direct appeal, and, in the alternative, that they fail on the merits. The motion was briefed fully. After briefing on the motion to dismiss was complete, petitioner filed the instant motion for evidentiary hearing on his § 2255 claims.

By M&R entered December 7, 2023, the magistrate judge recommends dismissal of the operative § 2255 motion, and denial of the motions for preliminary injunction/temporary restraining order and for evidentiary hearing. Shortly thereafter, petitioner filed the instant motion for criminal contempt, arguing that respondent should be held in criminal contempt for coaching witnesses and violating the court's sequestration order. Thereafter, petitioner filed objections to the M&R. Respondent did not respond to the objections or the motion for criminal contempt.

After submission of his objections, petitioner proceeded to file the following additional instant motions and related pleadings: 1) to present newly discovered evidence as a supplemental pleading to the operative § 2255 motion (DE 340); 2) supplemental pleading in support of his motion for preliminary injunction (DE 341); 3) to allow supplemental pleading and amendment of the operative § 2255 motion (DE 365); 5) to amend supplemental pleading (DE 369, 387); 6) to expand certificate of appealability (DE 389); 7) for investigation (DE 396); 8) to pay counsel from court funds (DE 401); 9) to unseal transcripts (DE 403); and 10) for relief from the November 14, 2022, order denying petitioner's prior motion for release on bail (DE 404). As noted above, respondent did not respond to these motions.

By these new motions to amend and supplemental pleadings, and the motion to expand

6

certificate of appealability, petitioner raises the following new claims:

1) New alleged violations of the court's sequestration order and prosecutorial misconduct by purported coaching of the victims, by reference to petitioner's notice of second or successive motion to vacate (DE 340, 312);
2) Prosecutorial misconduct, retaliation, and denial of access to the courts related to proceedings on respondent's motion for protective order and correctional officials' treatment of petitioner following the hearing on same (DE 365, 369, 387);
3) Ineffective assistance of counsel based on advocating for a long sentence (DE 389);
4) Prosecutorial misconduct based on respondent counsel's alleged vouching for trial witnesses' credibility (id.);
5) Ineffective assistance of counsel based on failing to object to the alleged vouching (id.); and
6) The court's errors applying sentencing enhancement under U.S.S.G. § 4B1.5 (Id.).

Finally, procedural history of respondent's post-conviction motion for protective order pursuant to 18 U.S.C. § 1514(b)(1) is relevant to the instant motions. Respondent filed this motion November 30, 2023, alleging petitioner had made several attempts to contact two of the victims in this case, T.H. and T.C. The victims suffered substantial emotional distress based on these attempted contacts. (Protective Order (DE 375) at 7–9). Following evidentiary hearing, the court granted the motion August 12, 2024. The protective order prohibits petitioner from contacting T.H. or T.C. or their immediate family members directly or through third parties, for a period of three years, on pain of fines and further imprisonment. (Id. at 24).

## STATEMENT OF FACTS

Petitioner's convictions arise from his sex trafficking of numerous victims by coercing them to engage in prostitution and retaining most of their earnings. To provide factual context for the claims asserted in the motions to vacate, the court summarizes below the testimony of the victims named in the indictment who testified at petitioner's trial, while acknowledging petitioner's allegations that the testimony against him in the main was false or embellished. Consistent with the conventions in the trial transcripts, victims are identified by initials only.

7

T.H. met petitioner in 2012 through a dating website. (Trial Tr. Vol. 2 (DE 207) at 234).[4] At the time, they were both living in Raleigh, North Carolina. (Id. at 234–36). T.H. initially believed she was in a romantic relationship with petitioner. (Id. at 235). After they met in person, however, petitioner asked her to begin prostituting at his direction, and she agreed to do so. (See id. at 236–37; Trial Tr. Vol. 3 (DE 208) at 21–22). T.H. left petitioner in 2012 upon discovering that he was trafficking a minor. (See Trial Tr. Vol. 2 (DE 207) at 237–38).

Petitioner resumed contact with T.H. in August 2015. (Id. at 238, 242). Petitioner invited T.H. to Colorado on the false pretense of starting a car detailing business and continuing their romantic relationship. (Id. at 243–44). She traveled with petitioner from North Carolina to Colorado, where they soon ran out of money. (Id. at 244–45). Petitioner convinced T.H to resume prostituting under his direction and control, and she proceeded to prostitute for the next eight months in multiple states. (See id. at 245–46, 256, 267–68). During this period, petitioner exerted control over T.H. and coerced her to continue prostituting by controlling her access to money, enforcing strict rules about how she presented herself to and interacted with others, threatening her, and physically and emotionally abusing her. (See id. at 260–67; 272–73, 284). Notably, petitioner struck T.H. in the face, threw an iron at her, and threatened to kidnap her children. (Id. at 260–67, 272–73). Petitioner also retained T.H.'s prostitution earnings. (Id. at 254).

T.H. left petitioner in April 2016 after discovering that petitioner was using their hotel room for sex with another woman. (Trial. Tr. Vol. 3 (DE 208) at 3–5). But even after T.H.

---

[4] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

escaped, petitioner tracked her down at her friend's residence in Colorado. (<u>Id.</u> at 8–10). When T.H. arrived at the residence, petitioner drove his vehicle into a position that blocked her from exiting. (<u>Id.</u> at 10). Petitioner then got out his vehicle and attempted to break the windows of T.H.'s vehicle. (<u>Id.</u>). He also ripped a windshield wiper off her car and destroyed the driver's side mirror, all while T.H. remained in the vehicle. (<u>Id.</u> at 10, 12–13). T.H. eventually drove around petitioner's vehicle and she was able to escape and meet with local law enforcement. (<u>Id.</u> at 11–12). The following day, petitioner sent a series of threatening messages to T.H., including: "If I go to jail somebody else will come for you and your family [expletive]" and "Ima blow your [expletive] head off and leave it in your [expletive] lap[.] I'm not joking you gotta go[.] If I catch you it's a wrap[.]" (<u>Id.</u> at 15–17). T.H. did not return to defendant after this incident. (<u>Id.</u> at 17).

C.A. met defendant in late 2015 on a dating website. (Trial Tr. Vol. 2 (DE 207) at 66–67). Shortly after they met online, petitioner moved in with C.A. and her roommate in Pennsylvania. (<u>Id.</u> at 67–68). During this initial period, C.A. believed she was in a legitimate relationship with petitioner. (<u>Id.</u> at 68). But they soon ran out of money, and instead of searching for employment petitioner proposed that C.A. begin prostituting, and she agreed to do so. (<u>Id.</u> at 68–69). Under petitioner's supervision, C.A. solicited clients by advertising escort services on the "Backpage" website. (<u>Id.</u> at 71–73).

From the beginning, petitioner controlled C.A.'s prostitution activities. He directed C.A. to tell clients that she would perform any sexual act requested. (<u>Id.</u> at 74–75). C.A. gave petitioner all of her earnings (which at times exceeded $600 per day), and petitioner controlled the times that she could eat, sleep, and take breaks, none of which could interfere with her prostitution activity. (<u>Id.</u> at 75–76). C.A. travelled with petitioner to numerous states where she prostituted

9

under petitioner's direction and control. (Id. at 94, 110–11, 113–14). At times, petitioner physically assaulted C.A. and she observed him assault other victims as well. (Id. at 104–06). C.A. left petitioner on several occasions, and petitioner once threatened her family if she did not return. (Id. at 106, 114). Ultimately, C.A. left petitioner with assistance from two female acquaintances. (Id. at 115–16).

R.W. met defendant through Facebook in 2013 when she was 15 years old. (Id. at 142, 159). In the early stages of the relationship, petitioner offered to meet R.W. in person after she told him she did not have reliable housing. (Id. at 145–46). Petitioner drove to pick her up and took her to a hotel room where he was staying with another woman. (Id. at 146–47). Shortly thereafter, and under petitioner's supervision, R.W. began prostituting by posting advertisements for escort services on Backpage. (Id. at 147–51). Petitioner retained all of R.W.'s prostitution earnings. (Id. at 151–54). R.W. continued prostituting at petitioner's direction intermittently for approximately three years, traveling with him and engaging in prostitution in North Carolina, Georgia, and Colorado. (Id. at 159, 163, 170–72). Ultimately, R.W. left petitioner on her own accord. (See id. at 172).

Finally, T.C. also met petitioner on a dating website in 2016. (Trial Tr. Vol. 3 (DE 208) at 83–84). During their online interactions, T.C. told petitioner that she was having financial difficulties and dealing with numerous other stressors in her personal life, and in response petitioner offered to come to Idaho to meet her in person. (Id. at 85–86). At the time, T.C. believed that petitioner wanted a romantic relationship with her, and she agreed to meet him. (Id. at 86). To raise money for a plane ticket, petitioner suggested that T.C. engage in prostitution and she agreed to do so. (Id.). True to form, petitioner posted an escort advertisement depicting T.C. on Backpage, and T.C. began meeting with clients who responded to the advertisements. (See id.

10

at 88–92).   After some initial difficulties, T.C. made enough money to purchase a plane ticket for petitioner to fly to Idaho and meet her.   (Id. at 91–92).

At this stage, T.C. still anticipated a romantic relationship with petitioner, and she believed that the prostitution was only temporary until they saved enough money to start a life together. (Id. at 92).   For instance, shortly after petitioner's arrival in Idaho, he encouraged T.C. to continue prostituting so they could save $100,000, which they would use to buy a house on an island.   (Id. at 92, 96, 110–11).

T.C. thus proceeded to prostitute at petitioner's direction from approximately July to December 2016.   (Id. at 96–107).   At times, T.C. would meet with as many as 10 clients in one day, and they travelled to various states for the purpose of prostitution.   (Id. at 104, 109–10, 120–21).   T.C. gave petitioner all of her prostitution earnings, and he required receipts for any expenses she incurred while prostituting in his absence.   (See id. at 105–106).   Petitioner physically assaulted T.C. on numerous occasions, particularly when in petitioner's view she did not make enough money through prostitution.   (Id. at 114–16).   In addition, petitioner threatened to kill T.C. and harm her children, withheld food when T.C. did not make enough money prostituting, and did not allow her to sleep when she wanted.   (Id. at 119–20).   Although T.C. tried to stop prostituting, petitioner coerced her to continue based on the foregoing physical assaults, threats, and controlling behavior.   (See id. at 120).

In October 2016, petitioner and T.C. arrived in North Carolina, where she continued to prostitute at his direction.   (Id. at 123–25).   During this time, petitioner recruited another minor victim, J.C., to engage in prostitution.   (Id. at 126–27; 191–214).   Petitioner met J.C. at her home and drove her to a residence in Raleigh.   (Id. at 128).   T.C. referred to this residence as a "trap house" where people used and sold drugs.   (Id.).   There, T.C. observed J.C. go into a back room

11

with an adult male to have sex, in what she described as an "initiation" into prostitution. (Id. at 128–29). T.C. could hear J.C. crying in pain during the sexual intercourse and after it was over she observed J.C. lying in the room crying. (Id. at 129).

After this incident, petitioner directed T.C. to teach J.C. how to prostitute. (Id.). Petitioner instructed T.C. and J.C. to travel to Charlotte, North Carolina and post escort advertisements on Backpage. (Id. at 130–31). T.C. began prostituting when they arrived in Charlotte in order to obtain money for a hotel room and food for her and J.C. (Id. at 131). J.C. did not post advertisements on Backpage or otherwise prostitute during this initial stage in Charlotte. (Id.). As this arrangement persisted, however, T.C. began complaining to petitioner that J.C. needed to "earn her keep" as well. (Id.). At first, petitioner told T.C., "it's not your call" but he later agreed that she should begin prostituting. (Id. at 131–32). Upon receiving permission from petitioner, T.C. took photographs of J.C. for Backpage advertisements, and she began prostituting. (Id. at 132–38). Although the precise timeline is not in the record, J.C. ended up meeting a client through Backpage and leaving with him. (Id. at 139).

T.C. continued to prostitute for petitioner until December 9, 2016, when she told petitioner she wanted to leave him. (Id. at 139, 144–52). Petitioner demanded that T.C. give him all her possessions, including her phone, before he would allow her to leave. (Id. at 152). T.C. resisted because photographs of her children were on the phone, and petitioner responded by violently assaulting her. (Id.). Petitioner repeatedly punched and kicked her, ultimately causing a seizure. (Id. at 152–53). During the assault, T.C. managed to dial 911 and leave the phone on, producing a chilling 911 recording of the assault. (Id. at 153–55; see also Gov. Trial Ex. TC15). Law enforcement arrived a short time later and arrested petitioner on unrelated charges. (Trial Tr. Vol. 3 (DE 208) at 155–57). At the time of the assault, petitioner knew that T.C. was pregnant with

12

his child.   (Id. at 158).

When petitioner was released from custody, he sent T.C. messages threatening to kill her and an individual who helped her following the assault, and subsequent messages in which he tried to convince her to return to prostitution.   (Id. at 168–71).   Ultimately, T.C. entered a safe house to get away from petitioner.   (Id. at 173).

## COURT'S DISCUSSION

A.    Standard of Review

As discussed above, the operative § 2255 motion and petitioner's motions for preliminary injunction/temporary restraining order (DE 315) and evidentiary hearing (DE 322) have been addressed in the M&R.   The district court reviews de novo those portions of the M&R to which specific objections are filed.   28 U.S.C. § 636(b).   The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."   Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).[5]   Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R.   Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983).   Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1).

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without

---

[5]         In citations in this order, all internal quotations and citations are omitted, unless otherwise specified.

jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

B.     Petitioner's Motions

1.     Motions to Pay Counsel and for Investigation

Turning first to petitioner's various motions, the court denies the request for court funds to pay counsel (DE 401) for the reasons stated in the prior orders denying appointment of counsel. (See DE 253, 276).[6] Petitioner's request for investigation (DE 396) also is denied. The court is not an investigative agency and petitioner in any event fails to establish that his criminal proceedings were "motivated by race and gender." (DE 396 at 1). Moreover, to the extent petitioner is asserting constitutional or other errors in his criminal trial and related proceedings, the proper procedure is to raise these issues on direct appeal or in a motion to vacate, and not by requesting investigation of the prosecutors or judicial officers.

2.     Motions for Injunctive Relief and Evidentiary Hearing

Petitioner also moves for temporary restraining order or preliminary injunction granting him release on bail pending resolution of his § 2255 claims, and for evidentiary hearing to resolve the instant claims. The motion for preliminary injunction/temporary restraining order (DE 315) is denied for the reasons stated in the November 4, 2022, order denying release on bail, and the

---

[6]     Petitioner also indicates that he has hired private counsel, but he does not request that the court defer consideration of the instant § 2255 claims or respondent's motion to dismiss pending counsel's appearance. (See DE 399). In any event, no counsel has made appearance on behalf of petitioner in the five months since he filed the notice.

Fourth Circuit's opinion affirming that order in relevant part. See United States v. Jennings, No. 22-7360, 2023 WL 2625621, at *1 (4th Cir. Mar. 24, 2023); (DE 276 at 1–2).

The motion for evidentiary hearing (DE 322) is denied where, for the reasons stated in the merits analysis below, petitioner fails to make the showing necessary for evidentiary hearing. In particular, "the motion and the files and records of the case conclusively show that petitioner is entitled to no relief." United States v. Hashimi, 110 F.4th 621, 627 (4th Cir. 2024). Likewise, none of the claims asserted include factual allegations that give the court reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. See United States v. Paylor, 88 F.4th 553, 565 (4th Cir. 2023); Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir.1992) (explaining unsupported or conclusory habeas claims should be dismissed without a hearing), abrogated on other grounds as recognized by Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). In addition, the court adopts analysis in the M&R as to the motions for evidentiary hearing and preliminary injunction/temporary restraining order. (DE 329 at 12, 18). Upon de novo review, and for the reasons stated above, petitioner's objections as to the rulings on these motions are overruled.

3. Motions for Criminal Contempt

In the motions for criminal contempt (DE 332, 402), petitioner requests that the court institute criminal contempt proceedings against respondent's counsel due to alleged violations of the court's sequestration order and respondent's counsel's improper coaching of the witnesses. To institute proceedings for criminal contempt, the court must find a willful violation of "a [court] decree which was definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed." Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d

15

123, 129 & n.3 (4th Cir. 1977).

Petitioner has not made this showing. The court did not issue any decrees regarding witness "coaching" and thus petitioner's allegations in this regard are insufficient for finding criminal contempt. See id. As to the alleged violations of the sequestration order, as discussed further below the order did not prohibit expressly out-of-court contact between the witnesses, and thus petitioner cannot show a violation of a decree that was "definite, clear, specific, and [that] left no doubt or uncertainty." See id.; United States v. Ali, 991 F.3d 561, 567 (4th Cir. 2021) ("[Federal Rule of Evidence] 615 itself serves only to exclude witnesses from the courtroom."); (Pretrial Conf. Tr. (DE 204) at 9 (granting oral motion to sequester witnesses made pursuant to Rule 615 without addressing non-courtroom contacts)).

4.      Motions to Amend

Although the court previously directed petitioner to file one, and only one, comprehensive motion to vacate (DE 283 at 1; DE 276 at 3), petitioner continues to request leave to amend the operative § 2255 motion. (DE 340, 365, 369, 387, 389).[7] When presented with a motion to amend, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be allowed "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss."

---

[7]      Although docket entry 389 is titled motion to expand certificate of appealability, as discussed above this motion in fact requests leave to file new § 2255 claims. The court also construes docket entries 340, 365, 369, and 387 as motions to amend notwithstanding their various captions.

16

Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation, 914 F.3d 213, 228 (4th Cir. 2019); see In re Triangle Capital Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny.").

The court begins with petitioner's three overlapping (and repetitive) motions to amend seeking leave to add new habeas claims premised on respondent's counsel's conduct during unrelated, post-conviction proceedings on respondent's motion for protective order. (Mots. to Amend (DE 365, 369, 387); see Mot. for Protective Order (DE 326); Protective Order Hr'g Tr. (DE 357)). As noted above, petitioner requested protective order prohibiting petitioner from contacting T.H. and T.C. during his term of imprisonment, and the court entered order to this effect in August 2024 following an evidentiary hearing. (Protective Order (DE 375) at 24).

As a threshold issue, to the extent petitioner seeks to challenge the protective order itself, that order currently is on appeal[8] and the court lacks jurisdiction to alter it in the instant procedural posture. See City of Martinsville, Virginia v. Express Scripts, Inc., 128 F.4th 265, 269–70 (4th Cir. 2025) (stating rule that pending appeal "divests the district court of its control over those aspects of the case involved in the appeal"). And to the extent petitioner claims that respondent attempted to thwart his investigation of the § 2255 claims by seeking a protective order, alleged prosecutorial misconduct occurring years after petitioner's trial and direct appeal cannot form the basis of a valid § 2255 claim. See United States v. Benson, 957 F.3d 218, 234 (4th Cir. 2000) (requiring showing that the prosecutor's alleged misconduct "deprived [defendant] of a fair trial").

Moreover, even if petitioner can challenge the integrity of the instant § 2255 proceedings

---

[8]    See United States v. Jennings, No. 24-6803 (4th Cir. Aug. 21, 2024).

on the basis of this alleged interference with his investigation, the claim fails on the merits for several independent reasons. First, the Supreme Court denied petitioner's petition for writ of certiorari December 13, 2021, at which time the one-year limitations period for seeking post-conviction relief began to run. See Order, Jennings v. United States, No. 21-6235 (U.S. Dec. 13, 2021); Clay v. United States, 537 U.S. 522, 527, 532 (2003); 28 U.S.C. § 2255(f)(1). Respondent did not file the motion for protective order until November 30, 2023, approximately two years after the conclusion of direct review. (See DE 326). Thus, petitioner had ample time to investigate his § 2255 claims during both this period and when the appeals were pending, and as the court explained in the order granting the motion for protective order, he never alerted the court that he needed assistance contacting the victims for purposes of the § 2255 claims. (Protective Order (DE 375) at 20–22). There is no evidence respondent attempted to thwart any investigation of the § 2255 claims during this lengthy period.

Second, petitioner's allegations of improper motive are contradicted by the record. See Paylor, 88 F.4th at 565 (permitting evaluation of § 2255 claims against the record of the criminal proceedings). Petitioner notes that he learned about the alleged violations of the court's sequestration order and the witness coaching in March 2023, and that he filed notice of second or successive motion to vacate addressing these issues on this court's docket April 10, 2023. (See Mot. to Amend (DE 387) at 4; Notice (DE 312)). Petitioner argues that during the protective order hearing respondent's counsel stated that law enforcement began investigating his contacts with the victims in early 2023, thereby suggesting a link between the new claims of prosecutorial misconduct asserted in April 2023 and respondent's request for protective order. (Mot. to Amend (DE 387) at 4–5).

Respondent, however, did not file the motion for protective order until seven months later,

18

which itself suggests no intention to prevent petitioner from investigating his § 2255 claims. (DE 326). More importantly, respondent did not request a protective order barring petitioner from contacting other victims who were present at the trial and would have witnessed the alleged improper coaching or violations of the sequestration order, such as R.W. or C.A. (See id.; Mot. for Criminal Contempt (DE 332) at 1–2 (asserting all victims were present for violations of the sequestration order and alleged coaching)). Instead, respondent moved for protective order only as to two victims who experienced substantial emotional distress when petitioner attempted to contact them and who had no intention of responding to his requests. (See Mot. for Protective Order (DE 326) at 7–8; Protective Order (DE 375) at 19–20).

Finally, petitioner asserts that respondent's counsel's arguments presented during the protective order proceedings show that respondent filed the motion to interfere with the § 2255 proceedings. (Mot. to Amend (DE 387) at 6–7). For example, counsel stated at hearing that the government was not requesting reopening of the judgment in connection with the request for protective order, which petitioner interprets as suggesting respondent was attempting to "obstruct" the § 2255 proceedings. (See id. at 6; Hr'g Tr. (DE 357) at 26–27). Respondent's counsel also argued that petitioner's discovery requests to the victims, filed in connection with the motion to vacate, were harassing and thus justified a protective order. (Mot. for Protective Order (DE 326) at 5).

Contrary to petitioner's interpretation, these statements do not establish the motion for protective order was an attempt to interfere with petitioner's motion to vacate. Indeed, the first time respondent even mentioned the discovery requests was in the motion for protective order filed eleven months after petitioner filed the discovery requests on the docket, and to this day respondent

19

has not filed any formal opposition to the requests.[9]  (See id.; Discovery Requests (DE 294)). And the fact that respondent did not request reopening of the judgment to prohibit contact with the victims during the term of imprisonment, and otherwise opposes § 2255 relief, is not evidence of obstruction or interference.

Thus, even assuming the alleged "prosecutorial misconduct" in the motions to amend (DE 365, 369, 387) were viable attacks on the integrity of the instant § 2255 proceeding, petitioner fails to allege plausible facts suggesting the motion for protective order was filed to interfere with prosecution of the § 2255 claims.   See Paylor, 88 F.4th at 565; Nickerson, 971 F.2d at 1136.   And for the reasons explained above, petitioner's assertions of improper motive are contradicted by the record such that the allegations are palpably incredible.   See Paylor, 88 F.4th at 565. Accordingly, these motions to amend are denied as futile.[10]

The court will address the remaining motions to amend (DE 340, 389) in the discussion below of related claims asserted in petitioner's operative § 2255 motion.   As discussed therein, these motions also must be denied where the newly asserted § 2255 claims would not survive a motion to dismiss.   See Save Our Sound OBX, 914 F.3d at 228.

C.      Operative § 2255 motion and remaining motions to amend

1.      Procedural Default and Ineffective Assistance of Counsel Claims

As noted, the magistrate judge recommends dismissal of petitioner's habeas claims in the operative § 2255 motion.   As a threshold issue, the magistrate judge determined that claims "1-5,

---

[9]       The court, however, will not permit any discovery in this action where petitioner's claims are subject to dismissal on the pleadings for the reasons stated herein.

[10]      To the extent petitioner is attempting to assert civil rights claims for denial of access to the courts or retaliation, those claims have no bearing on the validity of the instant conviction or sentence.   Petitioner will need to file a new civil rights action to assert these claims.   Moreover, as set forth above, the court finds no evidence on the present record suggesting respondent has interfered with petitioner's ability to prosecute his § 2255 claims.

7-8, 10-12, 15-17, 19-24, and 26-31 could have been raised on direct appeal but were not" and as a result she recommends dismissal of these claims pursuant to the doctrine of procedural default. (M&R (DE 329) at 13 (citing Massaro v. United States, 538 U.S. 500, 504 (2003)).

The general rule is that in most circumstances "claims not raised on direct appeal may not be raised on collateral review" by way of a § 2255 motion. Massaro, 538 U.S. at 504. But such procedural default may be excused where the petitioner demonstrates "cause and actual prejudice" or "actual innocence." Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th 1999). "To demonstrate cause for a procedural default, a petitioner must show there was some external impediment preventing counsel from constructing or raising the claim." United States v. Green, 67 F.4th 657, 666 (4th Cir. 2023). To establish prejudice sufficient to excuse procedural default in this context, the petitioner must demonstrate that the error "worked to his actual and substantial disadvantage," and not merely that the error created a "possibility of prejudice." Murray v. Carrier, 477 U.S. 478, 494 (1986); Green, 67 F.4th at 667–68.

In § 2255 cases, however, ineffective assistance of counsel claims are excluded from the procedural default rules. See Massaro, 538 U.S. at 504–06, 509. This is because ineffective assistance of counsel generally should be raised in the first instance in a collateral § 2255 proceeding as opposed to direct appeal, to allow for development of the factual predicate of the claim in the district court. Id. at 504–06. As a result, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Id.

Thus, to the extent the magistrate judge concluded that petitioner's ineffective assistance of counsel claims are procedurally defaulted because they could have been raised on direct appeal,

21

that was error.[11]   With limited exceptions discussed below, each of the claims that the magistrate judge determined were procedurally defaulted could be construed at least in part as asserting ineffective assistance of counsel.   (See Operative § 2255 Mot. (DE 286) at 4–30 (claims one through five), 33–36 (claims seven and eight), 38–42 (claims 10-12), 50–58 (claims 15-17), 61–73 (claims 19-24), 82–88 (claims 26-30); Pet'r Mem. (DE 290) at 1–3 (claim 31)).   As to the remaining claims, the magistrate judge correctly addressed these claims on the merits because they too raise ineffective assistance of trial or appellate counsel.   (DE 329 at 13–18).   In these circumstances, where each separate ground for relief can be construed in part as alleging ineffective assistance of trial or appellate counsel, the court must proceed to the merits.   See Massaro, 538 U.S. at 504; see also United States v. Herrera-Pagoada, 14 F.4th 311, 318 n.6 (4th Cir. 2021) (noting habeas petitioner's claim was not procedurally defaulted where he alleged the "trial counsel rendered ineffective assistance by failing to make the argument"); (Pet'r Objections (DE 338) at 4 (objecting to the M&R on this ground).[12]

Based on the foregoing, the court must reject the M&R to the extent the magistrate judge recommends dismissal of the ineffective assistance of counsel claims on the basis of procedural default, and petitioner's objections as to this issue are sustained.   The court adopts the M&R to the extent any claim or subpart thereof cannot be construed as asserting ineffective assistance of counsel, and those claims are dismissed as procedurally defaulted for the reasons given by the

---

[11]     The magistrate judge may have been led astray by respondent's counsel, who made the same mistake in the motion to dismiss.   (Resp't Mem. (DE 317) at 7–9).

[12]     The court agrees that petitioner effects an end run of the procedural default rules by attaching the label "ineffective assistance of counsel" to most of his claims.   This has required painstaking review of the record of this case to determine the merits, or lack thereof, as to essentially each of petitioner's numerous claims.   But the court is not aware of any exception to the ruled stated in Massaro that all ineffective assistance of counsel claims are permitted on collateral review regardless of the ability to raise them on direct appeal.   See 538 U.S. at 504; see also Herrera-Pagoada, 14 F.4th at 318 n.6.

magistrate judge, as supplemented in part by the analysis below. Petitioner's objections as to the non-ineffective assistance of counsel claims are overruled. The court also adopts the M&R's analysis of the ineffective assistance of counsel claims the magistrate judge resolved on the merits, (DE 329 at 13–18), but writes separately to address issues raised in petitioner's objections and to augment analysis in the M&R.

Turning to the governing legal standard for the remaining claims, the Sixth Amendment to the United States Constitution guarantees effective assistance of counsel in criminal cases. See Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to establish ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. See id. at 687. Under the first prong, a petitioner must show that his counsel's representation "fell below an objective standard of reasonableness." Id. at 688. The court must be "highly deferential" to counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The second prong requires a petitioner to demonstrate that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

2.    Claim One – Denial of Trial Counsel's Motion to Withdraw and other issues

The thrust of claim one is that the court erred by denying trial counsel's motion to withdraw from representation. (Operative § 2255 Mot. (DE 286) at 4–7). Where petitioner alleges that the court committed this error as opposed to trial counsel, this claim standing alone is procedurally defaulted. See Bousley, 523 U.S. at 622. But in an effort to excuse the procedural default, petitioner alleges that appellate counsel was ineffective for failing to raise the issue on direct

23

appeal.   (Operative § 2255 Mot. (DE 286) at 4).   Thus, the court must assess the merits of this claim regardless of whether it is under the rubric of procedural default or as a claim that appellate counsel was ineffective.   See Murray, 477 U.S. at 488 ("Ineffective assistance of counsel . . . is cause for a procedural default.").   In addition, and broadly construing claim one, petitioner also asserts that trial counsel was ineffective for entering a not guilty plea on his behalf without consulting with him, failing to review the discovery with him prior to trial, and making various improper remarks during opening or closing statements.   (See Operative § 2255 Mot. (DE 286) at 5–7).

As a threshold issue, most of these claims are barred by the invited error doctrine.   "A defendant in a criminal case cannot complain of error which he himself has invited."   Shields v. United States, 273 U.S. 583, 586 (1927).   Invited error doctrine extends beyond affirmative requests that the trial court take action that defendant later contends was error.   See United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997) (applying invited error where defendant's stipulations "prevented the Government from presenting any additional evidence" regarding prior convictions; United States v. White, 377 F.2d 908, 911 (4th Cir. 1967) ("When a defendant, acting through competent counsel, chooses to open up constitutionally forbidden subject matter, he may not effectively complain that his own trial strategy denied him his constitutional rights"); but see United States v. Braxton, 784 F.3d 240, 247 n.7 (4th Cir. 2015) (suggesting invited error defense is limited to affirmative requests that the trial court take action later claimed as error).   Thus, the doctrine may be invoked more broadly to cover claims where the defendant "himself, is responsible" for the alleged error.   Cranston Print Works Co. v. Public Serv. Co. of N.C., 291 F.2d 638, 649 (4th Cir. 1961); see Wilson v. Lindler, 995 F.2d 1256, 1265 (4th Cir. 1993) (Widener, J. dissenting), dissenting opinion adopted by Wilson v. Lindler, 8 F.3d 173, 175 (4th

24

Cir. 1993) (en banc); see also United States v. Console, 13 F.3d 641, 660 (3d Cir. 1993) (explaining invited error doctrine includes errors "induced by [the defendant]"). Finally, invited error "cannot form the basis for habeas corpus relief." Wilson, 8 F.3d at 175.[13]

Beginning with petitioner's claims related to his plea, counsel was required to enter a not guilty plea on petitioner's behalf when he refused to enter a plea. See Fed. R. Crim. P. 11(a)(4) ("If a defendant refuses to enter a plea . . . the court must enter a plea of not guilty."). Petitioner cannot claim that his counsel was ineffective for failing to consult with him prior to entering the plea when petitioner himself refused to engage with counsel. See Cranston Print Works, 291 F.2d at 649; Wilson, 8 F.3d at 175 (see Arraignment Tr. (DE 203) at 17 (trial counsel stating petitioner repeatedly refused to speak with them prior to arraignment); Pretrial Conf. Tr. (DE 204) at 2, 7, 10 (trial counsel noting pretrial meetings with petitioner were "extremely unproductive" and petitioner stating that he refused to speak with appointed counsel)).

Petitioner also suggests that his attorneys were ineffective because they failed to review discovery with him. (Operative § 2255 Mot. (DE 286) at 4, 6–7). But that is because petitioner refused to meet with his attorneys to discuss the discovery. (See Arraignment Tr. (DE 203) at 17, 20–21 (explaining that petitioner could have met with his attorneys to review discovery and defense counsel stating petitioner repeatedly refused to cooperate with this process); Pretrial Conf. Tr. (DE 204) at 2, 7 (trial counsel stating meetings with petitioner after arraignment were "extremely unproductive" and petitioner confirming he refused to speak with his counsel)). As

---

[13]     Although respondent in minimal briefing on the motion to dismiss did not raise invited error or analyze the merits of petitioner's claims in the manner set forth herein, the court may dismiss habeas claims sua sponte where, as here, the files and records of the case together with the pertinent legal principles conclusively show petitioner is not entitled to relief. See Rule 4, Rules Governing Section 2255 Proceedings, available at https://www.uscourts.gov/file/27805/download; United States v. Oliver, 865 F.2d 600, 601 (4th Cir. 1989).

a result, invited error also precludes this portion of claim one. See <u>Wilson</u>, 8 F.3d at 175; <u>Cranston Print Works</u>, 291 F.2d at 649.

Petitioner claims that he refused to communicate with counsel due to a meeting in which counsel stated that their "loyalty" was "to the court" as opposed to petitioner directly. (Operative § 2255 Mot. (DE 286) at 6). Petitioner provides no further detail regarding this meeting, and the statement would not, standing alone, justify wholesale refusal to communicate with counsel for the entirety of the pretrial proceedings. <u>See United States v. Morsley</u>, 64 F.3d 907, 918 (4th Cir. 1995) ("The district court is not compelled to substitute counsel when the defendant's own behavior creates a conflict" especially where "any difficulties [the defendant] was experiencing were due to his own belligerence.").

More importantly, petitioner refused to engage meaningfully with the court during the pertinent pretrial hearings, which made it impossible to conduct the necessary evaluations as to whether the breakdown in communication was so great that substitute counsel should be appointed, or that petitioner should be allowed to proceed pro se. <u>See United States v. Ductan</u>, 800 F.3d 642, 650–53 (4th Cir. 2015); <u>United States v. Blackledge</u>, 751 F.3d 188, 194 (4th Cir. 2014); (Oct. 26, 2018, Hr'g Tr. (DE 225) at 5–8; Arraignment Tr. (DE 203) at 2–9; Pretrial Conf. Tr. (DE 204) at 2–9). In these circumstances, the default rule is that counsel must remain appointed. <u>See Ductan</u>, 800 F.3d at 650 (explaining that in the absence of a knowing and intelligent waiver of the Sixth Amendment right to counsel, court must default to requiring counsel). Accordingly, the alleged errors relating to denial of trial counsel's motion to withdraw, discovery, and the not guilty plea were invited by petitioner, thus precluding habeas corpus relief. <u>See Wilson</u>, 8 F.3d at 175; <u>Cranston Print Works</u>, 291 F.2d at 649.

To the extent the remaining portions of claim one may not be barred by invited error,

petitioner fails to show either deficient performance or prejudice. As to the comments during trial counsel's opening statement and closing argument, petitioner alleges counsel stated that "they were not there to defend [him] and that [he] was not a likeable guy who[] pimped and manipulated [the victims.]" (Operative § 2255 Mot. (DE 286) at 6). Counsel also "used words like sad, sick, pathetic, and disgusting when describing the case to the jury." (Id.). As an initial matter, while counsel did say, "we're not here to defend [petitioner,]" the context of that statement makes clear that counsel was referring to his abhorrent behavior with respect to the victims generally, and not as to the specific criminal charges. (See Trial Tr. Vol. 4 (DE 209) at 60–61). Given the evidence against petitioner, counsel pursued reasonable strategy of admitting petitioner physically and emotionally abused the victims, but that his conduct nonetheless did not rise to the level of sex trafficking or satisfy the legal standard for the remaining charges. (See Trial Tr. Vol. 1 (DE 206) at 14–16; Trial Tr. Vol. 4 (DE 209) at 56–57, 60–61). This strategy required that counsel admit petitioner engaged in certain reprehensible conduct.

Thus, in the context of the incontrovertible evidence against petitioner, those statements reflect sound trial strategy. See Strickland, 466 U.S. at 690–91 (stating that strategic decisions are "virtually unchallengeable" on claim for ineffective assistance of counsel). Moreover, petitioner fails to allege any facts showing a reasonable probability of a different result had counsel employed different arguments or omitted the allegedly problematic statements. See Strickland, 466 U.S. at 694.

3.      Claim Two – Insufficient Evidence and Third-Party Culpability

In claim two, petitioner alleges counsel was ineffective for failing to raise "third party culpability" as to the charges involving J.C. (Operative § 2255 Mot. (DE 286) at 8). Contrary to this assertion, counsel specifically argued that T.C. trafficked J.C. (Trial Tr. Vol. 4 (DE 209)

at 57 ("When they were in Charlotte, [T.C.] was the one that insisted that [J.C.] prostitute herself."). The fact that the jury did not credit this argument is not grounds for relief under § 2255. See United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015). Moreover, there is no requirement that counsel raise this defense prior to trial, and the result would have been the same even if counsel did so. See Fed. R. Crim. P. 12.1 (requiring pretrial disclosure of alibi defense only at government request).

Petitioner also alleges counsel was ineffective for failing to argue there was insufficient evidence of his knowledge of J.C.'s age (as pertinent to count three), and insufficient evidence/actual innocence of the other charges generally. (Operative § 2255 Mot. (DE 286) at 8–21). But those basic arguments also were presented to the jury. (Id. at 58, see also id. at 47–62). In any event, the evidence supporting the convictions was overwhelming and incontrovertible, and thus petitioner cannot show he was prejudiced by any alleged ineffectiveness as to the issues raised in claim two. (See Trial Tr. Vol. 2 (DE 207) at 64–133, 139–86, 232–85; Trial Tr. Vol. 3 (DE 208) at 3–38, 82–176, 191–214; Trial Tr. Vol. 4 (DE 209) at 9–46).

To the extent petitioner now argues the victims provided false testimony by reference to new evidence not presented at trial, he does not allege that he provided this information to counsel or requested to testify on his own behalf, and thus he cannot show counsel was ineffective for failing to raise these points. (See, e.g., Operative § 2255 Mot. (DE 286) at 8–21). Moreover, respondent provided extensive documentary evidence supporting the victims' testimony and the newly offered evidence would not have changed the outcome of the trial. (See Trial Tr. Vol. 2 (DE 207) at 64–133, 139–86, 232–85; Trial Tr. Vol. 3 (DE 208) at 3–38, 82–176, 191–214; Trial Tr. Vol. 4 (DE 209) at 9–46). Finally, to the extent petitioner is attempting to assert a standalone claim for actual innocence, and further assuming that this is a cognizable claim, petitioner fails to

meet the standard for alleging it.    See McQuiggin v. Perkins, 569 U.S. at 383, 386 (2013) ("[A] petitioner does not meet the threshold requirement [for showing actual innocence sufficient to overcome procedural bar] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt"); Herrera v. Collins, 506 U.S. 390, 417 (1993) (assuming for the sake of argument the existence of standalone habeas claim for actual innocence in the context of capital sentencing).

As to the evidence regarding J.C.'s prostitution, petitioner correctly points out that counsel failed to address at trial a law enforcement report documenting that she denied engaging in prostitution during a pretrial interview.    (Operative § 2255 Mot. (DE 286) at 10; PSR (DE 161) ¶ 21).[14]    But no reasonable juror would have credited that statement when weighed against T.C.'s compelling and detailed account of J.C.'s prostitution, the Facebook messages exchanged between petitioner and J.C., and petitioner's overall offense conduct.    (Trial Tr. (DE 208) at 126–39, 191–214).    Finally, as to count five which charged production of child pornography, knowledge of the victim's age is not required to sustain the conviction.    See United States v. Malloy, 568 F.3d 166, 171–72 (4th Cir. 2009).    Thus, petitioner has not alleged viable claims for ineffective assistance of counsel in claim two.

4.    Claim Three – Double Jeopardy

In claim three, petitioner alleges counsel was ineffective for failing to raise a double jeopardy argument.    (Operative § 2255 Mot. (DE 286) at 23).    However, this claim fails for the simple reason that no double jeopardy concerns arise in this case.    When "multiple statutory offenses [are] premised on the same conduct," the court must "look to whether each charged

---

[14]        To the extent petitioner alleges that respondent failed to disclose this evidence, the court addresses this argument below in discussion of claim eight.

29

offense requires proof of some fact that the other does not require" to determine whether a double jeopardy violation exists. United States v. Goodine, 400 F.3d 202, 207–08 (4th Cir. 2005); see also Blockburger v. United States, 284 U.S. 299, 304 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

Petitioner primarily argues that counts seven, eight, and nine punish the same conduct as counts ten, eleven, and twelve. (DE 286 at 23–24). But counts seven, eight and nine require proof that defendant knowingly persuaded, induced, enticed, or coerced [the pertinent victim] to travel in interstate commerce to engage in prostitution. (Superseding Indictment (DE 69) at 4–5); 18 U.S.C. § 2422(a). By contrast, counts ten, eleven, and twelve require proof that defendant "knowingly transported [the pertinent victim]. . . to engage in prostitution." (Superseding Indictment (DE 69) at 5–6); 18 U.S.C. § 2421(a).

Thus, counts ten, eleven, and twelve require proof of knowing transportation of the victims, whereas counts seven, eight, and nine do not. (Superseding Indictment (DE 69) at 4–6); compare 18 U.S.C. § 2421(a) with 18 U.S.C. § 2422(a). And conversely, counts seven, eight, and nine require persuasion, inducement, enticement, or coercion whereas counts ten, eleven, and twelve do not. (Superseding Indictment (DE 69) at 4–6); compare 18 U.S.C. § 2422(a) with 18 U.S.C. § 2421(a). The pertinent counts therefore all require proof of a fact which the other does not. See Blockburger, 284 U.S. at 304. Although the Fourth Circuit has not addressed this issue in a published opinion, numerous courts have concluded that charging these or materially similar offenses in the same criminal prosecution does not present a double jeopardy problem, based on the above analysis. See United States v. Williams, 291 F.3d 1180, 1187 (9th Cir. 2002)

30

(analyzing 18 U.S.C. § 2423(a) as opposed to § 2421(a) but where the pertinent statutory language for the double jeopardy analysis is the same), overruled on other grounds by United States v. Gonzales, 506 F.3d 940 (9th Cir. 2007) (en banc); Wagner v. United States, 171 F.2d 354, 364 (5th Cir.1948) (analyzing predecessor versions of these statutes but where pertinent statutory language is the same); United States v. Townsend, 521 F. App'x 904, 908 (11th Cir. 2013). Petitioner fails to establish any error by counsel on this ground.

Petitioner also argues in conclusory fashion that counts one and seven, two and nine, four and six, and eight and eleven violate the Double Jeopardy Clause, and that counsel was ineffective for failing to raise this issue. (Operative § 2255 Mot. (DE 286) at 25–26). Notably, to the extent these claims are based on comparisons with the definition of sex trafficking offered by the expert witness at trial, such definition is irrelevant. See Goodine, 400 F.3d at 207–08 (explaining that the double jeopardy analysis focuses on which facts must be proved under the governing statutes).

The court begins with petitioner's claims regarding counts one and seven and two and nine, in which petitioner was convicted of violating 18 U.S.C. § 1591(a) (counts one and two) and 18 U.S.C. § 2422(a) (counts seven and nine). (Judgment (DE 185) at 1–2). Counts one and two require that the defendant know or have reckless disregard of the fact that "force, threats of force, fraud, or coercion" will be used to cause a person to engage in a commercial sex act, whereas counts seven and nine do not. Compare 18 U.S.C. § 1591(a) with 18 U.S.C. § 2422(a); (Superseding Indictment (DE 69) at 1, 4); see also Townsend, 521 F. App'x at 908–99. Furthermore, counts seven and nine require persuasion, inducement, enticement, or coercion to travel in interstate commerce to engage in prostitution while counts one and two do not. Compare 18 U.S.C. § 1591(a) with 18 U.S.C. § 2422(a). Therefore, each statue requires proof of a fact the other does not: in the case of § 1591(a) the knowledge or reckless disregard of sex trafficking, and

31

in the case of § 2422(a) the persuasion, inducement, enticement, or coercion to travel in interstate commerce of purposes of prostitution. As a result, petitioner fails to allege a violation of the Double Jeopardy Clause. Blockburger, 284 U.S. at 304; Townsend, 521 F. App'x at 908–99; cf. United States v. Brooks, 610 F.3d 1186, 1195 (9th Cir. 2010) (analyzing similar statutes and concluding no double jeopardy issues arise).

Turning next to counts four and six, petitioner was convicted of violating 18 U.S.C. § 1591(a)(1) (count four) and 18 U.S.C. § 2423(a) (count six). (Judgment (DE 185) at 1–2). The § 1591(a) charge in count four is predicated on a different form of sex trafficking than counts one and two, namely that petitioner trafficked a victim "who had not attained the age of 18 years . . . and knowing [or] in reckless disregard [of] the fact that [the victim] had not attained the age of 18 years, and would be caused to engage in a commercial sex act." (Superseding Indictment (DE 69) at 3); see 18 U.S.C. § 1591(a). In count six, respondent alleged that petitioner "did knowingly transport an individual who had not attained the age of 18 years . . . with the intent that such individual engage in sexual activity for which any person can be charged with a criminal offense." (Superseding Indictment (DE 69) at 3–4); see 18 U.S.C. § 2423(a).

These offenses each require proof of facts the other does not where § 1591(a) permits conviction for trafficking while "knowing or in reckless disregard of the fact that" the victim "will be caused to engage in a commercial sex act" whereas § 2423(a) requires transportation of the minor victim with specific intent that the victim engage in criminal sexual activity. Compare 18 U.S.C. § 1591(a) with 18 U.S.C. § 2423(a). As the United States Court of Appeals for the Ninth Circuit[15] has explained, the mens rea required for each conviction is distinct:

[I]f a sex trafficker arranged for a minor victim to be transported to a pimp in

---

[15]     The Fourth Circuit has not addressed this issue.

another state, the trafficker might know that the victim would be caused to engage in a commercial sex act without actually having any specific intent that the victim do so. In that case, the sex trafficker could be convicted of violating § 1591(a), but not § 2423(a).

Brooks, 610 F.3d at 1195. Thus, "[b]ecause § 1591(a) and § 2423(a) have different intent requirements, the same elements test is not satisfied." Id.; see Blockburger, 284 U.S. at 304.

Finally, counts eight and eleven are addressed in the analysis above, and no double jeopardy concerns arise for these convictions. Based on the foregoing, the petitioner's claims that trial or appellate counsel were ineffective for failure to raise the foregoing double jeopardy arguments are without merit.

    5.    Claim Four – Lesser Included Offenses

In claim four, petitioner alleges counsel was ineffective by failing to request an instruction on lesser included offenses. (Operative § 2255 Mot. (DE 286) at 27–28). However, counts ten, eleven, and twelve are not "lesser included offenses" of counts seven, eight, and nine where, for the reasons explained above, they require proof of distinct elements such that conviction on any one of counts seven, eight, or nine does not require conviction on counts ten, eleven, and twelve. Compare 18 U.S.C. § 2422(a) with 18 U.S.C. § 2421(a). A lesser included offense instruction is permitted only where the lesser offense omits an element required for conviction on the more serious offense charged. See United States v. Smith, 21 F.4th 122, 133–34 (4th Cir. 2021). That is not the case here for the reasons explained above. Moreover, the instruction should be given only where "proof on the element that differentiates the two offenses is sufficiently in dispute to necessitate instructing the jury on the lesser offense." See id. at 133. Petitioner does not allege any facts or point to any record evidence that would satisfy this standard. Counsel did not commit

33

any error in this regard.

      6.      Claim Five and Motions to Amend – Sequestration Order

In claim five, and in subsequent motion to amend the operative § 2255 motion, petitioner alleges violations of the court's sequestration order. (See Operative § 2255 Mot. (DE 286) at 29; Mot. to Present Newly Discovered Evid. (DE 340); Notice of Second/Successive § 2255 Mot. (DE 312).[16] The court provides brief background of the pertinent order and Federal Rule of Evidence 615 before proceeding to petitioner's arguments and factual allegations. During pretrial conference June 10, 2019, the court asked petitioner's counsel, "Is there a motion to sequester witnesses?" and petitioner's counsel responded, "Yes, Your Honor. We're making an oral motion . . . pursuant to Rule 615." (Pretrial Conf. Tr. (DE 204) at 9). The court granted the motion. (Id.).

At the time of petitioner's trial, Federal Rule of Evidence 615 provided as follows:

At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

      (a) a party who is a natural person;
      (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
      (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
      (d) a person authorized by statute to be present.

Fed. R. Evid. 615 (2019).[17] Thus, "[Rule 615's] plain language [applies] only to 'witnesses,' and

---

[16]     Petitioner provides the factual allegations supporting the new claim in the motion to amend primarily in his motions for criminal contempt (DE 332) and to file second or successive motion to vacate filed in the court of appeals. See Mot., In re Jennings, No. 23-154 (4th Cir. Apr. 7, 2023) (ECF No. 2). The court uses these filings to describe the factual allegations in this motion to amend.

[17]     Rule 615 was amended in 2023 to address sequestration outside the context of excluding witnesses from the courtroom, such as prohibiting disclosure of trial testimony to excluded witnesses after it has occurred. See Fed. R. Evid. 615 advisory committee's note to 2023 amendments. The rule now makes clear that traditional sequestration

34

it serves only to exclude witnesses from the courtroom." <u>United States v. Rhynes</u>, 218 F.3d 310, 316 (4th Cir. 2000) (plurality op.). Sequestration orders that "exceed[] the scope of Rule 615," such as orders prohibiting communication between the witnesses outside the courtroom, "should at least be explicit [and] be of record and timely." <u>Id.</u> at 321 n.13; <u>see also</u> <u>Ali</u>, 991 F.3d at 567–68 (recognizing distinction between Rule 615 orders that exclude witnesses from the courtroom and district courts' "discretionary authority to strengthen their sequestration orders outside of the courtroom"). For violations of sequestration orders that apply outside the courtroom, the complaining party must show "that he was harmed by out-of-courtroom conversations between witnesses." <u>Ali</u>, 991 F.3d at 568.

Petitioner alleges essentially two distinct violations of the court's sequestration order. In the operative § 2255 motion, claim 5, petitioner notes that C.A. testified she had lunch with several other victims prior to resuming her testimony following the break. (DE 286 at 29; <u>see also</u> Trial Tr. Vol. 2 (DE 207) at 129–30). In particular, during cross examination, petitioner's counsel asked C.A. if she knew any of the victims, and she responded that she knew three or four of them from the offense conduct. (Trial Tr. Vol. 2 (DE 207) at 129). This exchange followed:

Petitioner's Counsel: Did you have lunch today with [the other victims]?

C.A.: Yep.

. . .

Petitioner's Counsel: Did you all talk about this case?

C.A.: No, we did not.

---

orders "operate[] only to exclude witnesses from the courtroom." Fed. R. Evid 615(b). Under newly added subsection (b), courts may prohibit by additional orders disclosure of trial testimony to witnesses who are excluded from the courtroom and further prohibit excluded witnesses from accessing trial testimony. <u>Id.</u>

(Id. at 129–30).

From this testimony, petitioner argues that counsel was ineffective for failing to investigate purported violations of the sequestration order, including by requesting leave to question the other victims regarding whether they discussed the case with each other during lunch or at other times. However, the fact that the victims had lunch together did not violate the court's sequestration order, which only precluded the witnesses from hearing each other's in-court testimony.   See Fed. R. Evid. 615 (2019); Rhynes, 218 F.3d at 316; (Pretrial Conf. Tr. (DE 204) at 9).   And even if the order could be construed to apply outside the courtroom, it did not prohibit the witnesses from having lunch together, and C.A. testified that they did not discuss the case.   (Trial Tr. Vol. 2 (DE 207) at 129–30).

Thus, during the trial there was no basis for conducting further inquiry of the remaining witnesses on the speculative possibility that C.A. lied under oath, and counsel's failure to do so was not objectively unreasonable.   See Strickland, 466 U.S. at 688–89; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations [in the petition] must be enough to raise a right to relief above the speculative level."); United States v. Carthorne, 878 F.3d 458, 466 (4th Cir. 2017) (explaining ineffective assistance of counsel claims are evaluated on the basis of the existing legal authority and facts known to counsel at the time of the decision).   Indeed, the court would not have permitted such an inquiry on the basis of unsupported speculation that C.A. lied under oath.

By way of a motion to amend (DE 340) that directs the court to filings in the court of appeals and petitioner's "notice of successive claim" filed in this court (DE 312), petitioner now claims he has discovered further evidence showing violations of the sequestration order.   During investigation of the instant § 2255 claims, petitioner contacted R.W., who allegedly reported that

36

"throughout the trial [the victims] were coached by the government where the government stated it wanted everyone on the same account." (See Mot. for Criminal Contempt (DE 332) at 2). According to petitioner, R.W.[18] stated "that the government wanted her to remember things that had not happen[ed], like how [petitioner] had assaulted her, and she mentioned [to the government] that she was not going to say that." (Id.). In addition, R.W. allegedly told petitioner "that the government had each victim in a room together throughout trial discussing the case." (Id.). R.W. refused to provide petitioner with an affidavit or other sworn statement regarding these alleged violations of the sequestration order or witness coaching. (Id.).

This motion to amend must be denied as futile. As discussed above, the court's sequestration order did not prohibit out-of-court discussion of witness testimony, and thus petitioner fails to show a violation of the order on the basis of these hearsay allegations. See Fed. R. Evid. 615 (2019); Rhynes, 218 F.3d at 316; (Pretrial Conf. Tr. (DE 204) at 9).

But even if the order could be construed to reach outside the courtroom, or to the extent petitioner claims respondent engaged in improper "coaching" of the witnesses, petitioner cannot show prejudice. See Ali, 991 F.3d at 568 (requiring that defendant show that he was harmed by the violations in this context); Benson, 957 F.3d at 234 (noting prosecutorial misconduct claim requires showing that defendant was "deprive[d] . . . of a fair trial"). The evidence against petitioner was overwhelming and each victim's testimony was corroborated by contemporaneous documentary records, including text and Facebook messages, photographs, and advertisements for escort services on Backpage and other websites. (See Trial Tr. Vol. 2 (DE 207) at 64–133 (C.A. testimony), 139–186 (R.W. testimony), 232–285 (T.H. testimony); Trial Tr. Vol. 3 (DE 208) at 3–

---

[18]     R.W. is referred to as "J" or "J.B." in portions of the record. (See Trial Tr. Vol. 2 (DE 207) at 139–40).

38 (T.H. testimony), 82–176 (T.C. testimony)).    Moreover, the victims' accounts were distinct and included detailed, individualized depictions of petitioner's abhorrent treatment of the victims that did not in any way suggest coaching or coordination of testimony.    (See Trial Tr. Vol. 2 (DE 207) at 64–133 (C.A. testimony), 139–186 (R.W. testimony), 232–285 (T.H. testimony); Trial Tr. Vol. 3 (DE 208) at 3–38 (T.H. testimony), 82–176 (T.C. testimony)).    Tellingly, petitioner points to no specific testimony that he claims is false due to the alleged violations of the sequestration order or the alleged coaching.    As a result, this proposed new claim would not survive a motion to dismiss.    See Ali, 991 F.3d at 568; Benson, 957 F.3d at 234; Save Our Sound OBX, 914 F.3d at 228.

       7.      Claims Six – Biased Spectators

Petitioner next alleges counsel was ineffective for failing to object to spectators who allegedly "coached" victim T.C. during her testimony.    (Operative § 2255 Mot. (DE 286) at 31–32).    According to petitioner, the spectators "would make hand gestures to T.C. and as they would gesture with their hands T.C. would begin to cry."    (Id. at 31).    But even assuming this outlandish allegation is true,[19]  petitioner fails to establish prejudice for the same reasons explained above.    T.C.'s testimony was detailed and compelling, and corroborated by numerous independent, unchallenged records.    (Trial Tr. Vol. 3 (DE 208) at 82–176).    Petitioner fails to allege any facts suggesting objection to the spectators would establish a reasonable probability of a different outcome.

       8.      Claim Seven – Failure to File Motion for New Trial

Petitioner next claims that counsel was ineffective for failing to file a motion for a new

---

[19]      The court observed no such alleged coaching.

trial. (Operative § 2255 Mot. (DE 286) at 33). This claim fails the prejudice prong where petitioner does not show that a motion for new trial would have been successful. Federal Rule of Criminal Procedure 33 permits a new trial only "if the interest of justice so requires." Such motions "are highly disfavored [and] a court should grant [them] only sparingly[,]" such as when the evidence weighs heavily against the verdict or other substantial error has occurred. Ali, 991 F.3d at 570; United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir. 1985); see also United States v. Wall, 389 F.3d 457, 474 (5th Cir. 2004).

Here, the fact that petitioner refused to communicate with counsel until the second day of trial does not itself permit new trial under Rule 33. See Ali, 991 F.3d at 570; Morsley, 64 F.3d at 918 ("The district court is not compelled to substitute counsel when the defendant's own behavior creates a conflict."). A contrary rule would encourage defendants to engage in the same obstreperous behavior that petitioner displayed here, and it would permit a new trial every time the defendant initially refused to engage with counsel, and then lost at the first trial. See also Wilson, 8 F.3d at 175 (holding invited error "cannot form the basis for habeas corpus relief"). Counsel was not ineffective for failing to move for new trial on this basis.

        9.      Claim Eight – Inadmissible Evidence

In claim 8, petitioner alleges that his conviction for producing child pornography was based on inadmissible evidence because the pertinent Facebook messages were not authenticated. (Operative § 2255 Mot. (DE 286) at 34). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); United States v. Kaixiang Zhu, 854 F.3d 247, 257 (4th Cir. 2017). The "district court's role [is] to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which

the jury could reasonably find that the evidence is authentic." Kaixiang Zhu, 854 F.3d at 257. The burden to show a satisfactory foundation is "not high." Id.

Here, the child pornography images were authenticated by a government investigator who personally met J.C., subpoenaed her Facebook records, and reviewed her postings and private messages with defendant. (Trial. Tr. Vol. 3 (DE 208) at 191–95). In light of the personal meeting with J.C. and the fact that J.C.'s name and appearance matched the Facebook records, this investigator was competent to authenticate the records. See Kaixiang Zhu, 854 F.3d at 257 (holding email records were authenticated even though the government did not produce the author of the emails in circumstances where they were sent from a private account and contained information only the author of the emails would know). And to the extent petitioner argues that some unidentified third-party may have been using J.C.'s Facebook account or that J.C. herself was sending images of another person, the content and context of the messages is sufficient foundation for the jury to find that J.C. is sending them and that the photographs depicted her body. (Id. at 195–203; Gov't Ex. JC1); Kaixiang Zhu, 854 F.3d at 257 (distinguishing between legal foundation to offer evidence and jury's responsibility to find that the evidence is what the proponent claims). While it is true that trial counsel could have argued that a third party took control of J.C.'s account or that J.C. sent photographs of another woman, no reasonable jury would have accepted those claims in light of the record, and counsel was not ineffective for failing to raise this argument.

Petitioner also claims that T.C.'s testimony regarding J.C.'s prostitution and the fact that she witnessed J.C. crying in pain shortly after the prostitution initiation ritual was inadmissible and unfairly prejudicial. (Operative § 2255 Mot. (DE 286) at 35). First, this evidence was admissible as T.C. directly witnessed these events, and it is relevant to the charges related to J.C.

40

See Fed. R. Evid. 602; United States v. Van Metre, 150 F.3d 339, 349 (4th Cir. 1998) (explaining evidence is relevant if "it is has any tendency to make the existence of any determinative fact more probable than it would be absent the evidence"); (Trial. Tr. Vol. 3 (DE 208) at 126–39).

Second, the fact that this testimony may have aroused emotional responses by the jury does not mean that it is inadmissible under the Federal Rules of Evidence. Federal Rule of Evidence 403 provides that the court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Thus, relevant evidence is inadmissible where "there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that the risk is disproportionate to the probative value of the offered evidence." See Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1134 (4th Cir. 1988) (noting unfair prejudice is defined as evidence that "will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it"). Petitioner cannot meet this standard. T.C.'s testimony regarding J.C. was highly relevant to petitioner's crimes against J.C. and even though it may have elicited emotional responses the risk that it would excite the jury to make irrational decisions was not disproportionate to its probative value. See id.; Trial. Tr. Vol. 3 (DE 208) at 126–39). Accordingly, counsel was not ineffective failing to raise objections to the evidence challenged in claim eight.

Petitioner also argues that counsel was ineffective for failing to object to T.C.'s testimony based on a police report in which J.C. allegedly stated to an investigator that she did not have sex with any men during the time she was with petitioner. (Operative § 2255 Mot. (DE 286) at 35). The court addressed this same argument above in discussion of claim two, and for those same reasons the court finds petitioner fails to show ineffective assistance of counsel as to this issue.

To the extent petitioner argues that respondent's counsel committed prosecutorial

41

misconduct by failing to disclose the report prior to trial, petitioner fails to show that report was not disclosed to his counsel. Petitioner repeatedly refused to meet with counsel to review the discovery prior to trial, and he offers no plausible allegations suggesting the report was not disclosed to them. (See Arraignment Tr. (DE 203) at 17, 20–21; Pretrial Conf. Tr. (DE 204) at 2). His conclusory assertions that it was not disclosed are particularly suspect given that the report was provided to the probation office for inclusion in the PSR. (DE 161) ¶ 21).

Moreover, this claim is procedurally defaulted under the standard set forth above, and appellate counsel was not ineffective for failing to raise the argument in the circumstances presented here. The report largely corroborates T.C.'s testimony regarding J.C.'s relationship with petitioner. (Compare Trial. Tr. Vol. 3 (DE 208) at 126–39 (describing how petitioner met J.C., subsequent escort advertisements on Backpage, and T.C. and J.C.'s travel to Charlotte, N.C.) with PSR (DE 161) ¶ 21 (same)). More importantly, and given T.C.'s vivid and detailed account of J.C.'s activity together with the remaining overwhelming evidence against petitioner, there is no reasonable probability of a different result even if J.C.'s statement could have been used to impeach T.C. See Strickland, 466 U.S. at 694; Smith v. Robbins, 528 U.S. 259, 288 (2000) (discussing standard for ineffective assistance of appellate counsel and noting that petitioner must show that "ignored issues are clearly stronger than those presented" on appeal).

Finally, for the first time in his objections to the M&R, petitioner suggests he is bringing a Sixth Amendment Confrontation Clause claim based on the fact that J.C. did not testify at trial. (DE 338 at 51–52, 56). But petitioner did not bring this claim in his operative § 2255 motion, and he cannot amend his petition through his objections to the M&R. (Compare Operative § 2255 Mot. (DE 286) at 34 with Objections (DE 338) at 51–52, 56); see Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th

42

Cir. 2013).

In addition, and in the alternative, any Confrontation Clause claim fails on the merits where petitioner does not identify "testimonial hearsay" admitted for the truth of the matter asserted. See Smith v. Arizona, 602 U.S. 779, 784–85 (2024). "Evidence implicates the Confrontation Clause only if it constitutes a testimonial statement—that is, a statement made with a primary purpose of creating an out-of-court substitute for trial testimony." United States v. Reed, 780 F.3d 260, 269 (4th Cir. 2015). To the extent petitioner is claiming that admission of J.C.'s Facebook messages should have been excluded under the Confrontation Clause, that is incorrect. J.C.'s statements were not provided in a context where she "would have expected [her] statements to be used at trial." See United States v. Dargan, 738 F.3d 643, 650 (4th Cir. 2013).

Moreover, while the court recognizes that petitioner is proceeding pro se and his pleadings must be liberally construed, that principle does not require that the court conduct searching review of the transcripts to identify possible Confrontation Clause violations. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990) ("We do not believe that 28 U.S.C. § 2254 or the Section 2254 Rules require the federal courts to review the entire state court record of habeas corpus petitioners to ascertain whether facts exist which support relief. . . . We join the numerous federal courts which have repeatedly expressed their unwillingness to sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief."). Accordingly, any Confrontation Clause claim is dismissed as procedurally barred and alternatively on the merits.

Finally, to the extent claim eight or the M&R objections should be construed as a claim for ineffective assistance of counsel based on failure to assert a hearsay objection to the Facebook

43

messages between petitioner and J.C., that claim also fails. Petitioner's own statements in this exchange were admissible as an exclusion to the definition of hearsay under Federal Rule of Evidence 801(d)(2)(A), and J.C.'s responses were admissible to provide context for the exchange. See United States v. Wills, 346 F.3d 476, 490 (4th Cir. 2003). J.C.' statements also were admissible to show their effect on petitioner as opposed to the truth of the matters asserted. United States v. Gallagher, 90 F.4th 182, 195–96 (4th Cir. 2024).

10. Claim Nine – Failure to Investigate Medical Records

Petitioner next alleges that counsel should have subpoenaed T.C.'s medical records, which would have revealed that her story about the December 2016 assault was false. (Operative § 2255 Mot. (DE 286) at 37). But the assault was captured in progress on the 911 recording, confirmed by contemporaneous photographs, and petitioner admitted to the assault during recorded jail calls with T.C. (Trial Tr. Vol. 3 (DE 208) at 154–55, 158–66; Trial Tr. Vol. 4 (DE 209) at 39; Gov't Trial Exs. TC15, TC16A, TC16B, TC16D, TC16E, TC18A, TC18B)). Even assuming the hospital medical records could establish some discrepancies in T.C.'s report, considering the evidence recited above counsel was not ineffective for failing to subpoena same.

11. Claim 10 – Hearsay Statements at Sentencing

In claim 10, petitioner alleges that his sentence was enhanced on the basis of hearsay from witnesses C.M. and A.W. and that appellate counsel was ineffective for failing to raise this claim on direct appeal. (Operative § 2255 Mot. (DE 286) at 38). While the referenced statements were included in the PSR, they did not factor into the sentencing guidelines calculation or the court's sentence. (PSR (DE 161) ¶¶ 37, 38 (recording these statements in the "offense behavior not part of relevant conduct" section); Sent'g Tr. (DE 210) at 16–17 (overruling petitioner's objections as to these statements, where C.M.'s statements did not affect petitioner's culpability,

44

and A.W.'s statements were cumulative and "further confirmation of defendant's involvement in prostituting numerous women"). In any event, hearsay statements generally are permitted at sentencing. See United States v. Crawford, 734 F.3d 339, 342 (4th Cir. 2013); U.S.S.G. § 6A1.3(a). And petitioner is not entitled to jury determination on issues affecting only the guidelines sentencing range. See United States v. Lewis, 235 F.3d 215, 218–19 (4th Cir. 2000); see also Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (explaining rule that facts that increase the statutory sentencing range must be submitted to the jury). Appellate counsel was not ineffective for failing to raise these issues on direct appeal. See Smith, 528 U.S. at 288.

12.     Claim 11 – Failure to Question the Venire Panel as to Racial Prejudice

Petitioner also asserts that trial counsel was ineffective when they failed to request voir dire questions regarding racial prejudice. (Operative § 2255 Mot. (DE 286) at 40). To the extent this claim is predicated on the Sixth Amendment, "[t]he mere existence of an interracial relationship is not enough to show that race is so 'inextricably bound up' in a case that the Constitution requires the district court to ask about racial prejudice." United States v. Bowman, 106 F.4th 293, 303 (4th Cir. 2024) (quoting United States v. Barber, 80 F.3d 964, 968–69 (4th Cir. 1996) (en banc)). The Sixth Amendment also does not require voir dire regarding racial prejudice where the victims are white and the defendant is black, or where the jury is predominantly white while the defendant is black. See Ristaino v. Ross, 424 U.S. 589, 594–98 (1976); Goins v. Angelone, 226 F.3d 312, 323 (4th Cir. 2000), overruled on other grounds by Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000). Finally, the court's questions regarding the jurors' ability to evaluate the charges solely on the basis of the evidence presented in court "were broad enough to uncover bias, racial or otherwise." Bowman, 106 F.4th at 303; Barber, 80 F.3d at 970; (Voir Dire Tr. (DE 205) at 43–53, 76–78).

45

And even if some voir dire regarding racial prejudice may have been permitted or required under the Supreme Court's "supervisory" decisions on this issue, counsel was not ineffective for failing to request same.   See Rosales-Lopez v. United States, 451 U.S. 182, 192 (1981).   Such voir dire is required only upon counsel's request, see id., and the circumstances presented here counseled against requesting specific questions regarding racial prejudice.   Where the court asked questions that covered any bias as a general matter, counsel "avoid[ed] particularized inquiries into racial prejudice to minimize the possibility that race would play a role in the jury's decision."   Barber, 80 F.3d at 970.

Moreover, petitioner cannot show a reasonable probability of a different outcome where the court conducted voir dire that covered racial bias, and in the jury instructions the court directed the jury to consider only the evidence presented at trial when reaching a verdict.   (Trial Tr. Vol. 4 (DE 209) at 72–73; Voir Dire Tr. (DE 205) at 43–53, 76–78).   Contrary to petitioner's arguments, the court assumes the jury followed these instructions.   See CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009) (per curiam) ("[I]n all cases, juries are presumed to follow the court's instructions.").

13.    Claim 12 – Inappropriate Venue

For claim 12, petitioner alleges that the "venue" for his trial was inappropriate where he was tried in a location that draws jury members from predominantly white communities. (Operative § 2255 Mot. (DE 286) at 41–42).   Petitioner provides no specific allegations supporting this bald, conclusory assertion.   But even assuming that a predominantly white jury was more likely in the eastern division,[20] "the raw fact of skin color is not relevant in determining

---

[20]    See Standing Order 17-SO-5, Jury Plan at 3 (defining the eastern division), available at https://www.nced.uscourts.gov/rules/so.aspx.

the objectivity or qualifications of jurors." Barber, 80 F.3d at 969 (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991)). The court does not assume racial prejudice solely on the basis of racial composition of the jury. See id. Counsel was not ineffective for failing to request a transfer to the western division solely based on the unsupported conjecture that more black jurors may be called in a different division.

14. Claim 13 – Failure to Investigate Mitigating Factors or Challenge Competency Determination

Next, petitioner alleges counsel was ineffective for failing to investigate mitigating factors such as his mental health history and other personal characteristics prior to sentencing. (Operative § 2255 Mot. (DE 286) at 43–47). While the court acknowledges the severe and troubling allegations set forth in this claim and expresses its condolences to petitioner regarding any childhood traumas, counsel was not ineffective for failing to investigate these issues. The personal background and mental health issues were known to petitioner at the time of sentencing, and he could have raised them directly during allocution or shared them with counsel prior to sentencing. Petitioner cannot now claim ineffective assistance of counsel for failure to investigate issues that he himself could have shared with counsel. See Wilson, 8 F.3d at 175; (Sent'g Tr. (DE 210 at 3 (counsel explaining their interactions with petitioner regarding the presentence investigation report and noting "we based our objections based on what his requests were") id. at 29–30 (trial counsel confirming he did not know details of petitioner's childhood based on petitioner's failure to cooperate)); see also PSR (DE 161) at 17 ("The defendant declined to participate in the presentence interview with the United States Probation Office.")). In addition, petitioner's allegations in this claim would not have changed the court's competency determination. See 18 U.S.C. § 4241(d); (Forensic Report (DE 43)).

47

15.     Claim 14 – Ineffective Assistance of Appellate Counsel (claim 14)

By claim 14, petitioner alleges that his appellate counsel failed to respond to his attempts to contact him and refused to assert errors in the case that petitioner requested by mail.   (Operative § 2255 Mot. (DE 286) at 48–49).   Petitioner also alleges that appellate counsel failed to challenge respondent's appellate brief on the basis that it was not supported by the trial transcripts.   (Id.).

The same ineffective assistance standard set forth in Strickland applies on direct appeal. See United States v. Mason, 774 F.3d 824, 828–29 (4th Cir. 2014).   In most circumstances, a petitioner shows ineffective assistance of appellate counsel "only when ignored issues are clearly stronger than those presented" on appeal.   Smith, 528 U.S. at 288.   To show prejudice on a claim of failure to raise issues on appeal, "a petitioner must establish 'a reasonable probability . . . he would have prevailed' on his appeal but for his counsel's unreasonable failure to raise an issue." United States v. Rangel, 781 F.3d 736, 745 (4th Cir. 2015) (quoting Smith, 528 U.S. at 285-86).

Petitioner has not made this showing.   To the extent petitioner claims that the issues raised in the instant § 2255 claims are "clearly stronger" than the ones presented on appeal, the court disagrees for the reasons stated herein.   Smith, 528 U.S. at 288.   As to petitioner's claims regarding respondent's appellate briefing, he does not explain how any unsupported assertions in the brief compromised his appeal.   Accordingly, this claim also is without merit.

16.     Claim 15 – Unlawful Sentencing Enhancements

Petitioner next alleges that counsel was ineffective for failing to challenge his prior state convictions in which state prosecutors allegedly violated his constitutional rights.   (Operative § 2255 Mot. (DE 286) at 50–54).   But as a general matter petitioner cannot launch collateral attacks on state court convictions during federal sentencing proceedings.   See Custis v. United States, 511 U.S. 485, 487 (1994).   In any event, at offense level 43 petitioner was subject to an advisory

48

guidelines sentence of life imprisonment regardless of criminal history, and the court made clear at sentencing that a guidelines sentence was appropriate.   (See PSR (DE 161) ¶ 121; Sent'g Tr. (DE 210) at 40)); see also U.S.S.G. ch. 5 pt. A (2018 version).   Accordingly, these convictions had no impact on petitioner's sentence and counsel was not ineffective for failing to challenge them.

      17.     Claim 16 – Presentence Report Issues

      In claim 16, petitioner alleges he was not afforded opportunity to read or discuss the PSR with counsel or the probation officer who prepared the report.   (Operative § 2255 Mot. (DE 286) at 55–56).   But that is because petitioner refused to read the report during meetings with his counsel, or to meet with the probation officer for the presentence interview.   (PSR (DE 161) at 17 (noting petitioner declined to participate in the presentence interview); Sent'g Tr. (DE 210) at 3–4, 29–30).   As noted above, petitioner cannot assert ineffective assistance of counsel or other error related to the presentence investigation that was caused by his own obstreperous conduct. See Wilson, 8 F.3d at 175; cf. Morsley, 64 F.3d at 918 ("The district court is not compelled to substitute counsel when the defendant's own behavior creates a conflict.").

      18.     Claim 17 – Unnecessary Delay in Sentencing

      Petitioner next claims that the court violated his due process rights by holding the sentencing hearing beyond 180 days of the jury's verdict.   (Operative § 2255 Mot. (DE 286) at 57–58).   But there is no requirement that sentencing take place on a specific timeline.   Rather, the court "must impose sentence without unnecessary delay."   See Fed. R. Crim. P. 32.   Here, the delays were necessary for the reasons explained in the parties' various motions to continue (DE 132, 151, 156), which required adjournments to the April 27, 2020, term of court.   (DE 157 and accompanying docket text).   The COVID-19 pandemic then required the additional delay

until August 2020. Counsel was not ineffective for failing to raise this argument during the sentencing proceedings or on appeal.

19.      Claim 18 – False Arrest and Law Enforcement Misconduct

By claim 18, petitioner alleges that he pleaded guilty to simple assault pertaining to the incident with T.C. in December 2016, and in exchange "the state agreed" to forego prosecution for human trafficking. (Operative § 2255 Mot. (DE 286) at 59). But petitioner offers no evidence or specific factual allegations supporting this claim, and no such agreement was recorded in this court's records. (See PSR (DE 161) ¶ 45 (describing the assault conviction but not recording any agreement regarding future charges)). If such agreement in fact exists, petitioner invited this error as well by failing to tell his lawyers about it during the pretrial proceedings. In any event, any alleged agreement between state prosecutors and petitioner would not bind the federal government. See United States v. Harvey, 791 F.2d 294, 302–03 (4th Cir. 1986) (stating that federal prosecutors are authorized to enter plea agreements binding the federal government); see also United States v. Fuzer, 18 F.3d 517, 520 (7th Cir. 1994) ("[S]tate prosecutors cannot bind federal prosecutors without the latter's knowledge and consent."); cf. Garza v. Idaho, 586 U.S. 232, 238 (2019) ("[P]lea bargains are essentially contracts"). Accordingly, even assuming that petitioner entered into some form of non-prosecution agreement with state authorities, it is not binding on the federal government and this claim is without merit.

20.      Claim 19 – Vindictive Prosecution

Petitioner next claims that counsel was ineffective for failing to argue that he was subject to vindictive prosecution. (Operative § 2255 Mot. (DE 286) at 61–62). The standard for establishing prosecutorial vindictiveness requires either "objective evidence" of prosecutorial animus and that defendant would not have been charged but for that animus, or "circumstances

50

from which an improper vindictive motive may be presumed." United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001).

Here, petitioner provides no allegations suggesting objective evidence of vindictiveness or circumstances from which improper vindictive motive may be presumed. See id. The fact that respondent filed superseding indictments charging petitioner with new offenses does not raise a presumption of vindictiveness in this context. See id. at 315 ("Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, it will rarely, if ever, be applied to prosecutors' pretrial decisions."); United States v. Hill, 93 F. App'x 540, 545–46 (4th Cir. 2004). Four of the five most serious charges carrying potential life terms of imprisonment were charged in the initial indictment in counts one through four, and the penalties for the additional transport charge – count eleven, second superseding indictment – were "largely cumulative" of the similar transport charges in the original indictment. Hill, 93 F. App'x at 546; (compare Indictment (DE 1) (counts one through four) with Second Superseding Indictment (DE 69) (counts one through three, six, and eleven)); see also 18 U.S.C. §§ 1591(b), 2421(a), 2423(a).

As to the new sex trafficking and child pornography charges in the second superseding indictment (counts four and five), they were based on conduct that is distinct from the conduct underlying the other charges, in that they involved a different victim and production of child pornography. (Compare Indictment (DE 1) with Second Superseding Indictment (DE 69) at 2–3); see Blackledge v. Perry, 417 U.S. 21, 27–29 (1974) (concluding presumption of vindictiveness arose where prosecutor brought more serious charges based on the same conduct after defendant was granted new trial for misdemeanor assault). Accordingly, counsel was not ineffective for failing to assert prosecutorial vindictiveness.

21. Claim 20 – Respondent's Closing Argument

51

Petitioner next argues that respondent's counsel made various improper remarks during closing argument and counsel was ineffective for failing to object to same. (Operative § 2255 Mot. (DE 286) at 63–67). Petitioner first argues that there was insufficient evidence to support counsel's argument regarding the production of child pornography as charged in count five. As discussed above in connection with claim eight, respondent presented sufficient evidence to show that J.C. sent sexually explicit images of herself over the internet, and counsel's remarks as to this issue therefore were not improper. (See Trial. Tr. Vol. 3 (DE 208) at 191–214).

Petitioner also challenges respondent's counsel comments that knowledge of a victim's age is not required for petitioner's conviction for transporting a minor with intent that the minor engage in sexual activity for which she can be charged with a criminal offense, in violation of 18 U.S.C. § 2423(a) (count six). (Trial. Tr. Vol. 4 (DE 209) at 17). Contrary to petitioner's argument, that is a correct statement of the law. See 18 U.S.C. § 2423(a); United States v. Jones, 471 F.3d 535, 538–40 (4th Cir. 2006). And the same is true for count five, production of child pornography, to the extent petitioner challenges the argument as to this count. Malloy, 568 F.3d at 171–72.

Turning next to the closing arguments regarding victim C.A., petitioner argues that respondent's counsel incorrectly characterized C.A.'s testimony by stating that C.A. said petitioner "took many" of the photographs used in the Backpage postings. (Trial Tr. Vol. 4 (DE 209) at 20). To the contrary, C.A. in fact testified that petitioner took most of the pictures for her Backpage postings. (Trial Tr. Vol. 2 (DE 207) at 71–72 ("Q: And who took those pictures? A: Well, most of them, [petitioner].")). This claim is without merit.

As to the closing argument regarding victim R.W., petitioner argues that respondent's counsel's comment, "He prostituted her interstate. Here he is telling her 'book the flight now. Pack up your stuff and book up the ticket [to Oregon]'" was not supported by the evidence offered

52

at trial. (Trial Tr. Vol. 4 (DE 209) at 24). In particular, petitioner correctly notes that R.W. testified that she never traveled to Oregon after he made that statement.[21] (Operative § 2255 Mot. (DE 286) at 64; Tr. Tr. Vol. 2 (DE 207) at 159)). However, petitioner fails to account for the remaining evidence relating to R.W. As respondent's counsel summarized during closing argument, C.A. testified that she and R.W. both traveled to multiple states to engage in prostitution at petitioner's direction. (Trial Tr. Vol. 4 (DE 209) at 24–25 (closing argument); Trial Tr. Vol. 2 (DE 207) at 100–02 (C.A.'s testimony)).[22] And this testimony was for the most part consistent with the testimony offered by R.W. (See Trial Tr. Vol. 2 (DE 207) at 163, 169–71, 173–74). Accordingly, respondent presented ample evidence to support the charges relating to R.W., and counsel was not ineffective for failing to object to this one possible misstatement during closing argument.

Also during the closing argument related to R.W., respondent's counsel suggested that petitioner's comment "you're my lifelong baby girl" was a reference to the fact that R.W. was underage. (See Trial Tr. Vol. 4 (DE 209) at 25). But even if petitioner referred to adult women with that nickname, that offhand comment does not change the fact that the evidence fully supported respondent's argument that petitioner knew she was a minor, recklessly disregarded that fact, or had a reasonable opportunity to observe her. (Id. at 25–26; see Trial Tr. Vol. 2 (DE 207)

---

[21]    In fairness, respondent's counsel may have been referring to this exchange to show that R.W. previously traveled to Colorado to prostitute at petitioner's direction as opposed to suggesting that she traveled to Oregon. (See Trial Tr. Vol. 4 (DE 209) at 24–25; compare Trial Tr. Vol. 2 (DE 207) at 173–74; Gov't Ex. RW5 at 1–2). But the court must construe the record in petitioner's favor in this procedural posture, and in any event resolving the conflicting interpretations is unnecessary for the reasons explained herein.

[22]    As discussed previously, R.W. is referred to in the transcripts at times as "J" or "J.B.," which should not be confused with J.C., a separate victim. (See Trial Tr. Vol. 2 (DE 207) at 139–41; Gov't Ex. 3). C.A. refers to R.W. as "J" in her testimony, and respondent's counsel also uses "J" or "J.B." to refer to R.W. during closing argument. (Id. at 100–02; Trial Tr. Vol. 4 (DE 209) at 23–24). In fact, the full names were used during trial, but the court granted the government's unopposed motion to anonymize the victims in the public transcripts by using initials. (Pretrial Conf. Tr. (DE 204) at 15).

at 176–77 (showing that respondent began the relationship with R.W. when she was 15 years old and that they continued their relationship intermittently for two years; id. at 144–45 (noting petitioner met R.W. through Facebook and that R.W.'s profile page indicated she was still in high school at the time she met petitioner); id. at 110–11 (C.A. testifying that she told petitioner R.W. was a minor and that petitioner had R.W.'s identification and birth certificate in his possession)); 18 U.S.C. § 1591(a), (c) (providing that conviction for sex trafficking a minor can be sustained if the defendant knew the victim's age, recklessly disregarded that fact, or had a reasonable opportunity to observe her).

Relatedly, petitioner also challenges respondent's counsel's argument as to his ability to observe R.W. during their intermittent two-year relationship. (See Trial Tr. Vol. 4 (DE 209) at 26). In particular, petitioner argues that counsel's statement, "it would be awfully hard to spend two years in the company of somebody when they're 15 and not notice once they don't really act like an 18-year-old, that they don't seem 20 by the time you're done" was not supported by the evidence where R.W. testified that she left petitioner at times and thus they did not spend the full two years together. (Id.; compare Trial Tr. Vol. 2 (DE 207) at 159–60, 181). But even if counsel did not get the timeframe precisely accurate, it remains true that petitioner spent time with R.W. "on and off" for over two years, and the argument holds force regardless of this alleged inconsistency. (See Trial Tr. Vol. 2 (DE 207) at 159). Petitioner cannot show a reasonable probability of a different outcome on the basis of counsel's failure to object to this argument.

Petitioner's final claim regarding R.W. concerns counsel's argument that because R.W. did not have government identification the jury should infer that petitioner recklessly disregarded the

54

fact that she was underage.[23]  (See Trial Tr. Vol. 4 (DE 209) at 26).   Petitioner argues that this

was improper because people under age 18 can obtain government identification.   While this is

true as a factual matter, the fact that R.W. did not have identification is still one factor among many

the jury could have considered in connection with petitioner's reckless disregard of R.W.'s age.

See United States v. Banker, 876 F.3d 530, 541 n.10 (4th Cir. 2017) (discussing broad array of

evidence that may be considered under "reckless disregard" factor).

       For his remaining claims related to the closing arguments, petitioner alleges that

respondent's counsel's remarks stating that sex traffickers are no longer chaining their victims to

furniture in hotel rooms was improper and prejudicial.   (Trial Tr. Vol. 4 (DE 209) at 66).

Petitioner also challenges statements regarding a sexually explicit photograph that he sent to J.C.

(Operative § 2255 Mot. (DE 286) at 67; Trial Tr. Vol. 4 (DE 209) at 32; Trial. Tr. Vol. 3 (DE 208)

at 208; Gov't Ex. JC1 at 32)).   Petitioner argues that this photograph was irrelevant because he

took it two years before the messages with J.C. and the government improperly argued that it

showed the effects of J.C.'s photographs on petitioner.   (Operative § 2255 Mot. (DE 286) at 67).

Neither of these claims suggest ineffective assistance of counsel.   Respondent's counsel expressly

acknowledged that petitioner did not chain any victims, and so the statement could not have been

prejudicial to petitioner.   (Trial Tr. Vol. 4 (DE 209) at 66).   And the evidence amply

demonstrated that petitioner sent the sexually explicit photograph to J.C. with the intent to show

how her photographs affected him, so any comment in this regard was consistent with the evidence.

(See Trial. Tr. Vol. 3 (DE 208) at 208; Gov't Ex. JC1 at 32–34; compare Trial Tr. Vol. 4 (DE 209)

---

[23]      While C.A. testified that petitioner had R.W.'s birth certificate and identification at one time, petitioner stated
that R.W. herself did not have identification in a recorded jail conversation.   (Gov't Ex. RW7; Trial Tr. Vol. 2 (DE
207) at 157–58 (R.W. confirming she was using the named identified on the call)).

at 32).

In sum, petitioner's ineffective assistance claims related to closing arguments are without merit. Petitioner fails to show counsel's decisions were objectively unreasonable or a reasonable probability of a different result as to these claims.

22.    Claim 21 – Leading Questions

In claim 21, petitioner argues that respondent's counsel asked numerous leading questions and that this denied him the right to a fair trial. (Operative § 2255 Mot. (DE 286) at 68–70). But even assuming counsel was ineffective for failing to object to the form of the cited questions, petitioner has not alleged prejudice. As explained above, the evidence against petitioner was overwhelming, and petitioner offers no plausible allegations suggesting a reasonable probability of a different outcome as to this claim. See Strickland, 466 U.S. at 694.

23.    Claim 22 – Missing Witness Instruction

Petitioner next claims that counsel was ineffective for failing to request a "missing witness" instruction based on the fact that J.C. did not testify during the trial. (Operative § 2255 Mot. (DE 286) at 71). The "missing witness" jury instruction should be given if a witness with direct knowledge of the offense is "peculiarly within [the] power" of one side to produce but she is not called. See United States v. Brooks, 928 F.2d 1403, 1412 (4th Cir. 1991). In that limited circumstance, the failure to produce the witness "creates the presumption that the testimony . . . would be unfavorable" to that party. Id. The instruction is inappropriate when the witness "was equally available to either party." See Dunlap v. G & C. Towing, Inc., 613 F.2d 493, 497 (4th Cir. 1980).

Here, petitioner has not alleged that J.C. was unavailable to him to call as a witness or that she was "peculiarly within the power" of respondent to produce as a witness. See Brooks, 928

56

F.2d at 1412.    Accordingly, a "missing witness" instruction would not have been given, and counsel was not ineffective for failing to seek one.    To the extent this claim should be construed as asserting ineffective assistance of counsel for failing to subpoena J.C. as a witness, petitioner offers no plausible allegations suggesting she would have provided favorable testimony.    Indeed, J.C. largely admitted providing escort services at petitioner's behest, although she claimed she did not have sexual relationships with the men.    (PSR (DE 161) ¶ 21).    Moreover, the Facebook messages between petitioner and J.C. showed that petitioner directed J.C. to manufacture child pornography and solicited her to become part of his sex trafficking enterprise.    (Trial. Tr. Vol. 3 (DE 208) at 191–214).    Petitioner offers no allegations suggesting a reasonable probability of a different outcome if J.C. had been subpoenaed or testified.    See Strickland, 466 U.S. 694.

24.    Claim 23 – Defense Counsel's Closing Argument

For claim 23, petitioner alleges that counsel provided ineffective assistance by admitting that petitioner was a "belligerent pimp" during closing argument.    (Operative § 2255 (DE 286) at 72).    As explained above in connection with claims one and two, counsel had no choice but to admit that petitioner was a pimp in light of the evidence at trial, and counsel therefore pursued a reasonable strategy of admitting certain facts but arguing nonetheless that petitioner's conduct did not rise to the level of sex trafficking.    Counsel was not ineffective as to this issue.

25.    Claim 24 – Failure to Object to Exhibit During Respondent's Closing Argument

In claim 24, petitioner alleges counsel was ineffective for failing to object to "exhibit 16," a Facebook video recording that was played for the jury during oral argument but allegedly not offered into evidence during respondent's case-in-chief.    (Operative § 2255 Mot. (DE 286) at 73). On day three of the trial, respondent authenticated four different Facebook videos that petitioner posted, labeled government's exhibits 13, 14, 15, and 16.    (Trial Tr. Vol. 3 (DE 208) at 215–19).

57

Although the transcript indicates that respondent's counsel only formally moved to admit exhibits 13 through 15, (id. at 215), the context of the discussion makes clear that all four exhibits were tendered and received by the court. (See id. at 215–19). And counsel in fact lodged standing objection to admission of all four exhibits, which the court overruled. (Id. at 216–17).

During closing argument, respondent's counsel played a portion of exhibit 16 that was not played before the jury during the government's case-in-chief due to a technical error. (Trial Tr. Vol. 4 (DE 209) at 3–4). But as explained above the video was admitted and thus counsel was not ineffective for failing to raise an objection as to the closing argument. Moreover, even assuming that this portion of the video should not have been played during closing argument or admitted into evidence, petitioner fails to show a reasonable probability of a different outcome in light of the alleged error. See Strickland, 466 U.S. at 694.

26.    Claim 25 – Inconsistent Testimony

Petitioner next alleges that counsel was ineffective for failing to object to certain "inconsistent testimony" allegedly presented by respondent's witnesses. (Operative § 2255 Mot. (DE 286) at 74–81). Many of these claims address issues tangential or irrelevant to the charges against petitioner. (See id.). And to the extent petitioner alleges that the statements could have been used to challenge the credibility of the witnesses, he again fails to allege any facts suggesting a reasonable probability of a different outcome. See Strickland, 466 U.S. at 694. As noted above, the evidence against petitioner was overwhelming and essentially uncontroverted, and these alleged inconsistencies in the testimony would not have changed the outcome of the trial.

27.    Claim 26 – Evidentiary Challenge to Indictment

In claim 26, petitioner alleges the grand jury returned an indictment against him that was not supported by the evidence. (Operative § 2255 Mot. (DE 286) at 82–83). This claim fails,

however, because the evidence at trial supported each of petitioner's convictions. Petitioner does not have an independent right to challenge the sufficiency of the evidence supporting an indictment or the fact that the grand jury returned indictment against him on the basis of alleged lack of evidence. See Costello v. United States, 350 U.S. 359, 363 (1956) (rejecting evidentiary challenge to indictment and stating "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits"); United States v. Wills, 346 F.3d 476, 488–89 (4th Cir. 2003) (explaining "courts lack authority to review the sufficiency of evidence supporting an indictment"); see also Fed. R. Crim P. 6(b) (discussing permitted objections to grand jury proceedings); Fed. R. Crim. P. 29 (permitting motion for judgment of acquittal based on insufficiency of the evidence only after the "government closes its evidence" at trial).[24]

28.    Claim 27 – Denial of Self-Representation

In claim 27, petitioner argues the court violated his constitutional right to self-representation by denying counsel's motion to withdraw from representation. (Operative § 2255 Mot. (DE 286) at 84). This claim essentially is a repackaged version of claim one, and for the reasons given above, it is without merit. In summary, counsel must remain appointed in the circumstances presented here, where petitioner refused to cooperate with the court's inquiry regarding the relationship with counsel or any implicit request to proceed pro se. See Ductan, 800 F.3d at 650. And habeas relief is unavailable when petitioner invited the error he now asserts. Wilson, 8 F.3d at 175. For these same reasons, appellate counsel was not ineffective for failing

---

[24]    Although not raised directly, the court observes that the superseding indictment was "valid on its face" where it "tracks the [statutory language]" for each count and "properly alleges each element of the statute[s]." See Wills, 346 F.3d at 489; (Superseding Indictment (DE 69)).

to raise this claim.

29.     Claim 28 – Admission of Facebook Messages

Petitioner next claims that counsel was ineffective for failing to object to admission of an excerpt from petitioner's Facebook messages with victim R.W., wherein petitioner insulted her with demeaning and offensive expletives.    (Operative § 2255 Mot. (DE 286) at 85; Trial Tr. Vol. 2 (DE 207) at 162–63).    Contrary to petitioner's assertions, this exhibit was relevant to the sex trafficking and other charges related to R.W.    (See Superseding Indictment (DE 69) at 2–4; compare Trial Tr. Vol. 2 (DE 207) at 162–63).    And to the extent petitioner argues that admission of this except was unfairly prejudicial, counsel was not ineffective for failing to raise this issue for the reasons explained above in connection with claim eight.    See also United State v. Grimmond, 137 F.3d 823, 833 (4th Cir. 1998) ("Perhaps Grimmond's case was damaged when the jury heard evidence that he shot two individuals. However, damage to a defendant's case is not a basis for excluding probative evidence. . . Evidence that is highly probative invariably will be prejudicial to the defense.").

30.     Claim 29 – Failure to Apply First Step Act

By claim 29, petitioner alleges that counsel was ineffective for failing to seek a reduced sentence on the basis of the First Step Act of 2018.    (Operative § 2255 Mot. (DE 286) at 86). But petitioner was sentenced after the First Step Act was enacted and he fails to show that the Act affected his statutory penalties or sentencing guidelines determinations.    See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (enacted December 21, 2018).    This claim is without merit.

31.     Claim 30 – Denial of Impartial Judge

Petitioner next alleges that counsel was ineffective for failing to seek recusal and

reassignment to a different district judge. (Operative § 2255 Mot. (DE 286) at 87). Petitioner argues the court was biased against him based on its statement that petitioner had been victimized by "Moorish" sovereign citizen ideology that he espoused during the underlying criminal proceedings. (See Oct. 26, 2018, Hr'g Tr. (DE 225) at 6–8; Pretrial Conf. Tr. (DE 203) at 3–9). But the court's comments in this regard were directed to petitioner's obstreperous behavior and refusal to engage with the court or counsel during the underlying criminal proceedings, and not to any purported religious beliefs. (See Oct. 26, 2018, Hr'g Tr. (DE 225) at 6–8); Pretrial Conf. Tr. (DE 203) at 3–9).

In addition, petitioner's claims that he is a sovereign citizen or that he is not subject to the laws of the United States based on his ancestry were meritless and the court's summary dismissal of same does not constitute grounds for recusal. See 18 U.S.C. § 3231; United States v. White, 480 F. App'x 193, 194 (4th Cir. 2012) ("Neither the citizenship nor the heritage of a defendant constitutes a key ingredient to a district court's jurisdiction in criminal prosecutions."); see also United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented."). Moreover, the court does not exhibit bias when it enforces the rules regarding courtroom decorum and requires defendants to control themselves in judicial proceedings. See Liteky v. United States, 510 U.S. 540, 555–56 (1994). Counsel was not ineffective for failing to raise this meritless argument.

32.     Claim 31 – Constructive Amendment of Indictment (DE 290)

By way of separate memorandum of law, petitioner alleges counsel was ineffective for failing to challenge purported constructive amendment of the superseding indictment. (DE 290).

61

Although not a model of clarity, it appears petitioner argues the summary of the charges on the verdict form constitutes improper amendment of the superseding indictment. (Compare Superseding Indictment (DE 69) with Verdict (DE 119) and Pet'r Mem. (DE 290)).

> Constructive amendment of an indictment occurs where:
>
> [T]he court broadens the possible bases for conviction beyond those presented by the grand jury. In other words, there's a constructive amendment when the indictment is effectively altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.

United States v. Burfoot, 899 F.3d 326, 338 (4th Cir. 2018). Here, the court's jury instructions tracked the elements of the offenses charged in the superseding indictment, and thus no constructive amendment occurred. (See Trial Tr. Vol. 4 (DE 209) at 84–113; Superseding Indictment (DE 69)). The fact that the verdict form summarized charges using slightly different language relative to the superseding indictment does not constitute a constructive amendment because those slight alterations did not "change the elements of the offenses" charged and submitted to the jury. See Burfoot, 899 F.3d at 338. Moreover, petitioner's double jeopardy claims regarding the travel and transportation counts are without merit for the reasons explained above. Counsel was not ineffective for failing to raise this issue.[25]

33.    New Claims in Motion to Expand Certificate of Appealability (DE 389).

Finally, petitioner raises various new claims by his motion to expand certificate of appealability (DE 389). First, petitioner argues counsel was ineffective for arguing that a long sentence was justified in this case. (Id. at 1–2). But the advisory guidelines range was life imprisonment, (DE 161 ¶ 123), and counsel made the obvious strategic choice to argue against a

---

[25]    To the extent petitioner asserts even more claims regarding constructive amendment in his objections (DE 338 at 128), the court has reviewed and considered fully those issues and finds they are without merit.

62

life sentence while acknowledging petitioner's conduct justified a lengthy sentence. (Sent'g Tr. (DE 210) at 27–30). Counsel was not ineffective for making this decision. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Petitioner next claims that respondent's counsel engaged in improper "vouching" for the credibility of its witnesses during closing argument. (DE 389 at 2–3). "Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness." United States v. Jones, 471 F.3d 535, 543 (4th Cir. 2006). Petitioner argues that respondent's counsel engaged in improper vouching by stating C.A. "was very honest with you" when she admitted that she posted most of her own prostitution advertisements. (DE 389 at 2). In addition, respondent's counsel stated, "these women are not making this up" when referencing petitioner's assault on T.C. and other relevant conduct." (Id. at 3).

First, this claim is procedurally defaulted for the reasons explained above. Second, to the extent petitioner alleges trial or appellate counsel were ineffective for failing to raise this issue, and even assuming that the remarks at issue constitute improper vouching, petitioner fails to show a reasonable probability of a different result for the reasons explained above. See also Strickland, 466 U.S. at 694. Again, the evidence against petitioner was detailed, corroborated by his own messages to the victims, and it easily satisfied each pertinent element of the offenses charged. These two stray comments during a lengthy closing argument did not affect the outcome of petitioner's trial.

In his final claim, petitioner alleges counsel was ineffective for failing to object to his designation as a repeat and dangerous sex offender against a minor. (DE 389 at 5; see PSR (DE 161) ¶ 119). But petitioner qualifies for this enhancement because his offense is a covered sex

crime and he engaged in a "pattern of activity involving prohibited sexual conduct."   See U.S.S.G. § 4B1.5(b) & cmt. n.2, n.4 (Trial Tr. Vol. 3 (DE 208) at 129–39; Trial Tr. Vol. 2 (DE 207) at 139–54).   Contrary to petitioner's assertions, his lack of prior convictions for prohibited sexual conduct is irrelevant: "an occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion occurred during the course of the instant offense or resulted in a conviction."   U.S.S.G. § 4B1.5 cmt. n.4(B)(ii).   Counsel was not ineffective for failing to raise these issues.

In sum, petitioner's motion to expand certificate of appealability, construed as a motion to amend the operative § 2255 motion, is denied.   The claims petitioner asserts in this motion are futile where they would not survive a motion to dismiss.   See Save Our Sound OBX, 914 F.3d at 228.

Having now rejected petitioner's numerous claims, the court notes that it would reach the same result even if the various claims for ineffective assistance of counsel are considered collectively.   In the vast majority of cases, petitioner's underlying legal arguments are without merit and thus counsel was not ineffective for failing to raise them.   And to the extent some claims present legitimate grounds for objecting to the trial proceedings or sentencing, petitioner's conclusory assertions do not establish deficient performance or a reasonable probability of a different outcome.

D.     Certificate of Appealability

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The petitioner must demonstrate that reasonable jurists could debate whether the issues presented should have been decided differently or that they are adequate to deserve encouragement to proceed further.   Miller-El v. Cockrell, 537 U.S. 322,

64

336–38 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). After reviewing the claims presented on collateral review in light of the applicable standard, the court finds that a certificate of appealability is not warranted.

E.     Motion to Unseal Transcript

Petitioner also moves to unseal transcript of the protective order hearing (DE 403). The parties previously filed notice indicating that the transcript may be unsealed (DE 366), but the court inadvertently maintained the seal. This motion is granted on the terms set forth below.

F.     Petitioner's Excessive Filings

Petitioner's numerous and unrelenting filings in the instant criminal case are in many cases meritless or repetitive, and they impede efficient administration of the court's docket. Going forward, petitioner must desist from such excessive and irrelevant filings. In addition, upon conclusion of any appellate review of the instant order, and assuming no further proceedings are ordered by the court of appeals, petitioner is jurisdictionally barred from filing additional challenges to his conviction or sentence in the district court without first obtaining pre-filing authorization from the court of appeals to file second or successive § 2255 motion. <u>See</u> 28 U.S.C. §§ 2255(h), 2244(b)(3); <u>United States v. Winestock</u>, 340 F.3d 200, 205 (4th Cir. 2003). Thus, in the absence of reversal of this order by the court of appeals or order granting authorization to file successive § 2255 motion, petitioner shall desist from filing further challenges to his conviction or sentence in this court.

Courts may "limit access to the courts by vexatious and repetitive litigants." <u>Cromer v. Kraft Foods N. Am., Inc.</u>, 390 F.3d 812, 817 (4th Cir. 2004). Although "[s]uch a drastic remedy must be used sparingly . . . consistent with constitutional guarantees of due process of law and access to the courts," <u>id.</u> at 817, the court nevertheless may issue a prefiling injunction in "exigent

65

circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." Id. at 818; see also United States v. Woods, 411 F. App'x 594 (4th Cir. 2011) (affirming pre-filing injunction requiring defendant to obtain court approval before filing additional post-judgment motions in a criminal case). In the event petitioner fails to comply with the instructions in the first paragraph of this section, pre-filing injunction that requires permission from the court before filing additional post-judgment motions in this case may be entered. Finally, repetitive motions raising the same factual or legal arguments presented in the instant motions will be denied summarily with reference to this order.

**CONCLUSION**

Based on the foregoing:

1.  Petitioner's objections to the M&R (DE 338) are SUSTAINED IN PART and OVERRULED IN PART on the terms herein, and the court ADOPTS IN PART and REJECTS IN PART the M&R (DE 329). As supplemented by the analysis herein, the M&R is adopted as to any ineffective assistance of counsel claims dismissed on the merits by the magistrate judge, and the non-ineffective assistance claims that the magistrate judge found were procedurally defaulted. The court declines to adopt the M&R as to those ineffective assistance of counsel claims that the magistrate judge found procedurally defaulted;

2.  Respondent's motion to dismiss (DE 316) is GRANTED, petitioner's motions to vacate (DE 256, 285, 286) are DENIED, and the court declines to issue a certificate of appealability;

3.  Petitioner's motions for preliminary injunction and temporary restraining order (DE 315), for evidentiary hearing (DE 322), for criminal contempt (DE 332, 402),

66

to present newly discovered evidence as a supplemental pleading to the operative § 2255 motion (DE 340), to allow supplemental pleading and amendment of the operative § 2255 motion (DE 365), to amend the supplemental pleading (DE 369, 387), to expand certificate of appealability (DE 389), for investigation and report to news media (DE 396), and for court funds to pay counsel (DE 401) are DENIED;

4. Petitioner's motion for relief from judgment or order (DE 404) is TERMINATED as moot;

5. Petitioner's motion to unseal transcript (DE 403) is GRANTED and the clerk shall unseal the transcript of the protective order hearing at docket entry 357; and

6. The clerk is DIRECTED to close the instant § 2255 proceedings.

SO ORDERED, this the 11th day of July, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

67